# Harmony Electric Co., Appellant, v. Public Service Commission.

*Electric light companies—Competing companies—Contracts—Approval by Public Service Commission.*

Where an electric light company has not exclusive right to furnish electric current under the law of its creation, and has no vested contract right so to do, and there is a company already in existence which has the right to furnish the current, and has for years done so, to the satisfaction of all parties concerned, the question whether the approval of a contract with the first company was necessary or proper for the service, accommodation and convenience of the public is a question of fact, and not of law.

Where the Public Service Commission, after considering all the facts and surrounding circumstances, declines to approve such contract, it is acting in its administrative capacity, and the Superior Court will not reverse the determination of the commission, except in a case involving manifest and flagrant abuse of discretion.

Argued April 11, 1918. Appeal, No. 33, April T., 1918, by Harmony Electric Co., from order of the Public Service Commission, M. C. Docket No. 60-1914, dismissing a petition for approval of a contract between Harmony Electric Co. and the Borough of Ellwood City. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

356   HARMONY ELEC. CO., Appel., *v.* PUB. SER. COM.

Statement of Facts—Opinion of the Court. [71 Pa. Superior Ct.

Appeal from order of the Public Service Commission.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order of the commission, dismissing the petition for approval.

*Walter Lyon,* and with him *J. Norman Martin,* for appellants.

*Ralph J. Baker,* and with him *Geo. E. Alter,* for intervening appellee.

OPINION BY PORTER, J., April 21, 1919:

This is an appeal from a determination of the Public Service Commission refusing to approve a proposed contract between the appellant company and the Borough of Ellwood City, in the County of Lawrence. The order of the commission was dated July 9, 1914, the appeal from that determination was originally taken to the Court of Common Pleas of Dauphin County, on August 5, 1914, and the record remained in that court until July 11, 1917, when it was certified to this court. The parties not deeming the matter urgent, the argument of the appeal was delayed to suit the convenience of counsel. Several questions are discussed in the printed briefs and were referred to at length upon the oral arguments which it is not within our province to consider, as they were not raised at the hearing before the Public Service Commission, and no testimony was offered establishing facts out of which those questions could arise. The Public Service Company Law, the Act of July 26, 1913, P. L. 1374, Article VI, Section 22, provides: "At the hearing of the appeal the said court shall, upon the record certified to it by the commission, determine whether or not the order appealed from is reasonable and in conformity with law," and to this record our inquiry must be confined. The Pennsylvania Power Company, the pro-

testant before the commission, and the intervening defendant here, had been furnishing electric light to the Borough of Ellwood City under a five-year contract which expired on January 7, 1914. The charter of the company was not offered in evidence and is not before us, but it was assumed by the parties at the hearing that the company had the lawful right to so furnish electricity and that it and the appellant company had the lawful right to compete for this business. We must, therefore, dispose of the case in the same manner in which it was presented to the commission.

The plant of the Pennsylvania Power Company is located in the Borough of Ellwood City. The commission found that it represented an investment of $350,000, there was evidence sufficient to sustain that finding and the learned counsel for the appellant company conceded in his statement before the commission that it was probably worth $100,000. The capital of the Harmony Electric Company, the appellant, is $25,000 and the only property which it possessed was a lease of a plant for the generation of electricity, located about nine miles from the borough, the annual rental which it covenanted to pay for this plant was $18,000. The contract with the Borough of Ellwood City which the Public Service Commission was asked to approve was to run for a term of ten years, and it contained no provision requiring the electric company to give security for its faithful performance. The borough authorities had, in September, 1913, requested the Pennsylvania Power Company and the Ellwood City Electric Company (which corporation subsequently became merged in the Harmony Electric Company) to make bids "for furnishing the borough with electric current, for a five-year contract, and a ten-year contract." There was no advertisement for bids, there is no statutory requirement that there should be nor were the borough authorities required to resort to competitive bidding in the matter. The invitations to each of the two companies stated that bids would be received not

later than September 30, 1913, but there was nothing in the correspondence which could be held to require the borough to accept any bid.   The municipality remained perfectly free to accept new bids from either of the companies or from any other bidder who might be able to furnish the electric current.   When the bids were opened it was found that the Ellwood City Electric Company had offered to furnish electric current during the period of ten years at the flat rate of 1.5 cents per kilowatt hour while the bid of the Pennsylvania Power Company was to furnish current upon a sliding scale of rates, dependent upon the amount of current furnished.   The committee on electric light of the borough council reported on October 7, 1913, that the bid of the Ellwood City Electric Company was the lower and recommended that a contract be awarded to that company.   The Pennsylvania Power Company upon the same day, October 7, 1913, addressed a communication to the borough council stating that their bid had been misunderstood, that it was in fact more favorable to the borough than that which the committee of the council had reported in favor of accepting, and that in view of this misunderstanding the company would agree to furnish electric current at the rate of 1.5 cents per kilowatt hour for a five-year contract with the privilege to the borough of renewing the contract at that rate for an additional five years.   This communication further stated that the Pennsylvania Power Company still considered their original bid as more advantageous to the borough and that the company would still stand bound by that bid in case the borough upon consideration chose to accept it.   It is here proper to observe that the borough down to this time had assumed no contract obligation.   It then had presented to it the offer of the Ellwood City Electric Company to furnish current at the price of 1.5 cents per kilowatt hour during a period of ten years and a proposition of the Pennsylvania Power Company to furnish current at the same rate for a period of five years, the borough to have the

right to continue the contract for an additional five years, in case at the expiration of the first period the borough authorities elected so to do. The Pennsylvania Power Company, on December 3, 1913, addressed a communication to the borough council that although the existing contract between that company and the borough would expire on January 7, 1914, the company would not suspend its service at that date unless ordered to do so by the borough officials, and that it would continue to furnish electric service to the borough at the rate of 1.5 cents per kilowatt hour, such service to be discontinued upon receipt of written notice from the borough council. Thus the matter rested until December 31, 1913, when the burgess approved an ordinance of the borough council awarding the contract to the Ellwood City Electric Company during the term of ten years, subject to the approval of the contract by the Public Service Commission. Neither the borough nor the electric company was to become bound by the contract until approved by the Public Service Commission.

The appellant company came into existence upon the 31st day of December, 1913, by the merger of the Ellwood City Electric Company and a number of other corporations, and became invested with the rights of the companies thus merged. Both the appellant company and the Pennsylvania Power Company had the right to furnish this borough with electricity, subject to the approval of the Public Service Commission, but neither of the companies had the exclusive right to contract with the borough for furnishing current. When a contract is presented to the Public Service Commission for its approval, the authority and duty of the commission is defined by Article V, Section 18, of the Public Service Company Law; "such approval, in each and every such case, or kind of application, shall be given only if and when the said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience

or safety of the public." This appellant having no exclusive right to furnish electric current under the law of its creation and having no vested contract right so to do, and there being a company already in existence which had the right to furnish the current and had for years done so to the satisfaction of all parties concerned, the question whether the approval of the contract was necessary or proper for the service, accommodation, convenience or safety of the public, was certainly not a question of law. The question was really one which involved the public welfare. It was proper for the commission to consider all the facts which tended to throw light upon the interests of the community to be served, including the character and location of the plants and instrumentalities of the respective companies and the probabilities of their being able to continue to furnish satisfactory service during a long period of years. The council of the borough which, in the closing days of its existence, awarded this contract, underwent a change early in January, 1914, new members having been elected in the November preceding. A majority of this new council adopted a resolution praying the Public Service Commission to refuse its approval of the contract, and a large number of business men in the borough joined in a petition praying for similar action. The Public Service Commission in passing upon the question thus presented to it was exercising administrative functions. We have repeatedly said that this court is not a second administrative body and we have no authority to substitute our judgment for that of the commission in the decision of such questions. We would not be warranted in reversing the determination of the commission save in a case which involved a manifest and flagrant abuse of discretion. In view of the evidence as to the judgment of parties directly interested and the final declaration of a majority of the members of the council of the borough, we certainly cannot say that the determination of the commission was not reasonable.

The determination of the Public Service Commission is affirmed and the appeal dismissed at costs of the appellant.