# Dickson, Appellant, *v.* Public Service Commission.

*Public Service Commission—Public Service Company Law—Electric light companies—Eminent domain—Certificate of public convenience approving exercise—Scope of certificate—Jurisdiction of Public Service Commission—Evidence—Act of May 21, 1921, P. L. 1057.*

The Public Service Commission always has control of the operation of a public utility to the extent that it may require service to consumers along the route of a transmission line, when public interests demand it.

In a hearing before The Public Service Commission upon a petition by an electric company for the approval of the exercise of the right of eminent domain in acquiring a right of way for the construction of a transmission line, the protestant offered to show the nature and extent of the damages which would be occasioned to him through the construction of the line. In such a case the Commission properly excluded the protestant's offer on the ground that it has no jurisdiction to determine the damages arising from the exercise of the power of eminent domain by a public utility; that jurisdiction was vested in the Court of Common Pleas by the Act of May 21, 1921, P. L. 1057.

The selection of a route for transmission lines is a matter for the public utility in the first instance and, unless it is shown that it proposes to exercise the powers conferred upon it wantonly, corruptly or capriciously, or that the rights of the land owner have been trifled with or unreasonably disregarded, the law does not contemplate that the Commission should withhold its approval simply because another route might have been adopted.

An application seeking approval of the exercise by a corporation of the sovereign right of eminent domain should not be based merely upon the action of executive officers.

An order of the Public Service Commission approving the exercise by an electric company of its right of eminent domain in the appropriation of a right of way for the construction of a transmission line will be sustained although no action was taken by the board of directors prior to the presentation of the petition by the executive officers, where the board of directors ratified the filing of the petition prior to final action by the Commission.

Argued April 30, 1926. Appeal No. 123, April T., 1926, by protestant Charles A. Dickson, from order of The Public Service Commission of the Commonwealth of Pennsylvania. In re: Application of the Duquesne Light Company for the approval of the exercise of the

right of eminent domain. Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ. Affirmed.

Application to The Public Service Commission for a certificate of public convenience approving the exercise of the right of eminent domain.

The facts are stated in the opinion of the Superior Court.

The Public Service Commission granted a certificate of public convenience. Protestant appealed.

*Error assigned,* among others, was the order of The Public Service Commission.

*H. F. Stambaugh,* and with him *Watson & Freeman,* for appellant.—Unless all of the public have the legal right to use the proposed improvement it does not constitute a public use: 1 Lewis Eminent Domain, Sec. 313; Poland Coal Company's Case, 58 Pa. Superior Ct. 312; Jacobs v. Clearview Water Supply Company, 220 Pa. 388; Edgewood Railroad Company's Appeal, 79 Pa. 257; Stewart's Appeal, 56 Pa. 413; McCandless' Appeal, 70 Pa. 210; Pittock v. Central District & Printing Telegraph Co., 31 Pa. Superior Ct. 589.

*J. R. McNary,* and with him *A. W. Robertson, Edwin W. Smith,* and *Reed, Smith, Shaw & McClay,* for Duquesne Light Company.—The right of way is for a public and not for a private use: Philadelphia Belt Line R. R. Co., 13 Pa. Corp. Rep. 481; Hairston v. Danville & W. Ry. Co., 208 U. S. 598; Union Lime Company v. Chicago and N. W. R. Co., 233 U. S. 211; Dickinson Township Road, 23 Pa. Superior Ct. 34; Philadelphia Clay Company v. York Clay Company, 241 Pa. 305; Poland Coal Company, 58 Pa. Superior Ct. 312.

*Frank M. Hunter,* Special Counsel, and with him *John Fox Weiss,* Assistant Counsel, and *W. Y. Blan-*

*ning,* Legal Assistant, for the Public Service Commission.—The findings and determinations of the Commission were in conformity with law: Coplay Cement Mfg. Company v. P. S. C., 271 Pa. 58; Citizens Passenger Railway Company v. P. S. C., 271 Pa. 39; Swarthmore Borough v. P. S. C., 277 Pa. 472; Biddle v. P. S. C., 81 Pa. Superior Ct. 350; Kulp v. P. S. C., 82 Pa. Superior Ct. 83; Schuylkill Railway Co. v. P. S. C., 268 Pa. 430; Johnston v. Callery, 184 Pa. 146.

OPINION BY CUNNINGHAM, J., July 8, 1926:

Charles F. Dickson, appellant herein and in the companion appeal at No. 124 April Term, 1926, of this court, is the owner of a tract of land containing approximately 1800 acres, located in Beaver County along the eastern side of the Ohio River and lying between the Boroughs of Ambridge on the south and Baden on the north. He appeals at this number from an order made by the Public Service Commission of the Commonwealth of Pennsylvania at its Application Docket No. 12,189—1925, approving the exercise of the right of eminent domain by the Duquesne Light Company in acquiring a right-of-way for the construction, operation and maintenance of a transmission line over a part of his said property, and at said No. 124 April Term, 1926, from a similar order approving a similar application of the same public service company with respect to another transmission line which joins the one first above mentioned and, if constructed, will extend over another portion of his said property—the last mentioned order having been made at the Commission's Application Docket No. 13,235—1925. Although there were two separate applications to the Commission by the Duquesne Light Company, intervening appellee in both appeals, and separate orders by the Commission on each application, the respective lines, as planned, will form a continuous transmission line and we shall therefore consider these appeals together.

The Duquesne Light Company is a corporation organized under the Act of April 29, 1874, P. L. 73, and its supplement, the Act of May 8, 1889, P. L. 136, for the purpose of supplying light, heat and power by means of electricity, and, through various consolidations, mergers and purchases of other companies, is now furnishing electricity in the greater part of Allegheny and Beaver Counties, including Harmony Township, Beaver County, in which the property in question is located.

Among other power stations it has a station in said Borough of Ambridge with a transmission line extending therefrom along Duss Avenue in said borough, which street, as we understand it, extends north of said borough into said Harmony Township, and from this station a transmission line also crosses to the west side of the Ohio River and extends northwardly to a substation in the Borough of Woodlawn.

An extensive plant of the Jones and Laughlin Steel Corporation is located on the west bank of the river in the vicinity of said Borough of Woodlawn and this corporation is the owner of a substation at its said plant. Being desirous of erecting additional transmission lines in this territory, said Duquesne Light Company presented its petition, signed by its President and verified by his affidavit, to the Commission. In this petition, and the amendment thereto, it is averred, inter alia, that it is about to construct a transmission line from a point on said Duss Avenue a short distance south of said Borough of Baden to and across the Ohio River "for the purpose of transmitting electric service to more than 3,000 consumers in the vicinity of Woodlawn, Beaver County, Pa., and to serve power to various industries in this district, including the power service of the Jones and Laughlin Steel mills at Woodlawn"; that in connection with other lines under construction the proposed line would serve power to several corporations, naming them, and that the tower of

the Jones and Laughlin Steel Corporation is the only practical place to enter the Jones and Laughlin property and is a convenient location for a connection with the Woodlawn substation through which the public in that vicinity is served.

After averring that the applicant had been unable to reach an agreement with appellant with respect to the purchase of a right-of-way for this line, which will be approximately 1,443 feet in length and will cross the right-of-way of the Pittsburgh, Fort Wayne and Chicago Railroad Company between said Duss Avenue and the river, the petition states that the construction of the line "is necessary and proper for the service, accommodation, convenience or safety of the public," and prays that the Commission may so find and issue a certificate of public convenience to that effect, as provided for by the Act of May 21, 1921, P. L. 1057. This petition is referred to as the first petition or No. 12,189—1925 of the Commission's record.

About five months later the applicant presented a second petition, signed and verified by its Vice President and General Manager, setting forth that it is about to construct a transmission line from said Ambridge Borough substation "for the purpose of transmitting electric service to more than 3,000 consumers in the vicinity of Woodlawn, Beaver County, Pa., and to serve power to various industries in this district," naming the Jones and Laughlin Steel Corporation and other industries; that the route of the transmission line, as laid out by the applicant, crosses the land of appellant and runs, roughly, parallel to said Duss Avenue to a point a short distance south of said Borough of Baden at which it turns westwardly and connects with the proposed line above mentioned at Duss Avenue. There will also be a branch about 1600 feet in length from the main line to the plant of the Standard Seamless Tube Company in said Borough of Ambridge. The main route proposed in said second petition is ap-

proximately 15,744 feet in length. This is the petition filed at the Commission's record No. 13,235—1925. The total length of the lines involved in both petitions is about 18,790 feet and it is proposed to transmit electric energy over them at 22,000 volts.

Prior to the presentation of said applications to the Commission the Duquesne Light Company entered into a contract with said Jones and Laughlin Steel Corporation, in which it was provided in substance that two independent lines would be constructed from said Ambridge substation; that one of these lines should go direct from Ambridge to the substation of said Jones and Laughlin Steel Corporation "without any taps"; and that the second should go direct from Ambridge to the proposed new Woodlawn substation of the light company, with a tap to another substation of said steel company. No formal corporate action was taken by the board of directors of said Duquesne Light Company adopting said routes or authorizing said applications to the Commission, but on September 22, 1925, and prior to the order of the Commission, a resolution was passed by the board of directors of the light company adopting a line therein described "as the center line of the right-of-way upon which said electric transmission line is to be constructed," followed by a description of the line referred to in the above mentioned second petition. The Commission, after public hearings, found and determined that the service to be furnished by the light company through the exercise of the powers granted to it by said Act of 1921 is necessary and proper for the service, accommodation, convenience and safety of the public, and accordingly approved both applications. Upon these appeals by the said land owner it becomes our duty to determine whether the orders made by the Commission are reasonable and in conformity with law.

Twenty-nine assignments of error have been filed in support of this appeal, the first sixteen of which are

also filed at No. 124 April Term, 1926, together with four additional assignments in that appeal. The assignments may be summarized thus: error, (a) in granting petitions because the orders of the Commission attempt to authorize the taking of private property under the right of eminent domain for private use in violation of the constitutional rights of appellant; (b) in excluding the offers of appellant to show the possibility of building over a different route with less damage to his property, the location of industrial sites already sold by appellant with reference to the remainder of the property, the industrial character of the property and the railroad facilities available, a recent sale of a portion of the property at a price of $4,000 per acre, the effect on the value and suitability of the tract for an industrial plant of the erection of the proposed transmission lines, and in general that the proposed lines would needlessly sacrifice his property and that the damage would be out of all proportion to the cost of relocating the line along another route; (c) in not withholding approval because proper corporate proceedings, condemning the rights-of-way for the purposes mentioned and authorizing the applications to the Commission, were not taken prior to the filing of the petitions, and because the proposed line referred to in the second petition is not sufficiently described therein.

1. The first proposition is evidently based upon the fact that in the original petition relative to the first line no reference was made to the rendition of additional service to any consumers other than the Jones and Laughlin Steel Corporation, and upon the fact that in the letter of said corporation, forming the basis for the contract, it is stated that one of the lines shall be a line "without any taps." We have already referred to the amendment to the petition describing the extent of the service to be rendered to the public through said line, and it is not necessary to demon-

strate here that no contract between the light company and the steel company, providing for exclusive service to the steel company, can possibly deprive the Commission of its power to regulate and control the service in the interest of the public and to require service to consumers along the routes of these transmission lines: Kulp et al. v. Commission, 82 Pa. Superior Ct. 83. In its report the Commission said: "It is not necessary to a decision in this matter to determine whether the power of eminent domain may be exercised by an electric light company for the purpose of furnishing service to one consumer, because, under the testimony in this case, we find that the proposed lines covered by these applications are necessary and proper to furnish duplicate and supplemental service, not only to the Jones and Laughlin Steel Corporation, but also to a large number of users of current. At present, upwards of 3,000 consumers are served from a line which extends four or five miles through a rugged country from the dividing line between Allegheny and Beaver Counties to the Woodlawn substation. On a number of occasions, outages and failures of service have resulted from the fact that there is but one source of supply." This finding on the part of the Commission is supported by evidence and the assignments of error relating thereto are dismissed.

2. Upon the second proposition to the effect that the Commission erred in making the orders in question because it would be practicable to build a line across the property on another location with less damage, and in excluding appellant's offer to show the value of his land, its unique suitability for industrial purposes and that the construction of towers and high tension lines upon and over it would greatly injure such value, we are satisfied that the report of the Commission furnishes a complete justification of its action. Upon this branch of the case the Commission said:

"We agree with the protestant that the land sought to be condemned must be necessary for the corporate use in transmitting electricity, and that this necessity must be passed upon by the Commission before the power is exercised. There is no evidence in this case that the applicant is acting wantonly or arbitrarily in the exercise of its power or in the choice of a route for the lines in question."

Manifestly, the selection of the route for the lines is a matter for the light company in the first instance and, unless it is shown that it proposes to exercise the powers conferred upon it wantonly, corruptly or capriciously, or that the rights of the land owner have been trifled with, or unreasonably disregarded, the law does not contemplate that the Commission should withhold its approval simply because another route might have been adopted. In Biddle v. Wayne Water Works Company, 190 Pa. 94, it was held that the discretion of a water company in adopting a route for its pipe lines and in condemning private property "can only be restrained or controlled by the court where the condemnation or exercise of the state's right of eminent domain has been exercised in an unreasonable manner." In the language of our Supreme Court in Coplay Cement Mfg. Co. v. Commission, 271 Pa. 58, "It was not intended by the legislature that the Commission should be a board of managers to conduct and control the affairs of public service companies, but it was meant that where certain of their powers and obligations had intimate relation to the public through fairness, accommodation or convenience, the Commission should have an inquisitorial and corrective authority to regulate and control the utility in the field specifically brought within the Commission's jurisdiction." In our opinion the Commission has not been guilty of any abuse of the administrative discretion vested in it in approving the routes selected by the light company. The Commission properly excluded the evidence offered for the

purpose of showing the nature and extent of the damages which would be occasioned to appellant through the construction of the lines. It is expressly provided by the Act of 1921, supra, that the damages arising from the exercise of the powers therein conferred "shall be ascertained, recovered, and paid, as provided by the 41st section of the Act of April 29, 1874, P. L. 73, and amendments and supplements thereto." The Commission therefore had no jurisdiction over the subject matters of the offers because the Legislature has expressly conferred that jurisdiction upon the proper Court of Common Pleas. The assignments of error relating to this branch of the case are accordingly overruled.

3. The questions arising under the third classification of the assignments of error, as applied to the facts in the present case, relate rather to the proper order of procedure than to matters of substance. We have already stated that no formal action was taken by the board of directors of the Duquesne Light Company authorizing the making of the applications to the Commission or adopting the routes of the proposed lines prior to the filing of the petitions, but that such resolution was adopted with respect to the line referred to in the second petition and filed with the Commission prior to the making of the orders. It is stated in the brief of the light company that a similar resolution was adopted, filed with the Commission, and a copy thereof sent to counsel for appellant, with respect to the line referred to in the first petition, but this resolution does not appear in the printed record. It is alleged by the learned counsel for appellant that the proposed line is not sufficiently described in the resolution appearing in the record. A comparison of the language of the resolution with the exhibits shows that the error is trifling and is substantially corrected by Exhibit B. This resolution describes in a general way the manner in which it is proposed to construct the line and

states that the light company proposes to exercise its power to erect, operate, repair, renew and finally remove said line and to enter upon said tract of land at any time for said purposes, and to exercise the right to trim or remove any shrubbery, trees or obstructions which it may deem necessary to prevent interference with the operation of the transmission system. By said resolution the directors also adopted the line therein minutely described ''as the center line of the right-of-way upon which the said electric transmission line is to be constructed.'' It is contended in behalf of appellant that there is not sufficient description of the interest in the property sought to be condemned. When the petitions, the evidence and the exhibits are considered together we are satisfied that there was sufficient before the Commission to form a basis upon which it could determine whether the service was necessary and proper, particularly in view of the character and extent of the easement required. Again, it is contended on behalf of appellant that the passing of proper resolutions by the directors of the light company, adopting the routes and authorizing the applications to the Commission prior to the presentation of the petition, was essential to the exercise of the powers of the Commission in this case.

It is argued, by way of analogy, that the procedure established by our decisions with respect to the exercise of the right of eminent domain in acquiring a right-of-way for a railroad under the Act of 1849, and subsequent legislation, should be followed in proceedings under the Act of 1921. It was determined in Johnston v. Callery, 184 Pa. 146, and kindred cases, that the proper steps are, first, a preliminary entry on the lands to mark out one or more experimental lines, and, second, the selection and adoption of a line by the directors of the company. It is perfectly clear that the power of eminent domain cannot be exercised until the property to be taken has been specifically de-

fined and its selection approved and the taking authorized by proper corporate action. The Commission takes the position in this case that no formal action of the board of directors of the company was necessary before the approval of the Commission is sought; that the approval must be secured before the power conferred by the statute can be exercised and that the resolution of the board may properly follow the approval of the application. We are not prepared to affirm this proposition in its entirety, nor is it necessary to make a final disposition of this matter in this case. The resolutions here were adopted before final action by the Commission and in our opinion amounted to a ratification of the acts of the President and Vice President in presenting the respective petitions. This court said in Reiber v. Commission, 83 Pa. Superior Ct. 507, and repeated in Hege v. Commission, 86 Pa. Superior Ct. 558, that "The granting of the certificate (under the Act of 1921) determines neither the validity nor the scope of subsequent proceedings by eminent domain; it evidences only the preliminary approval by the regulatory body to whom general regulation of the service of such companies was entrusted as specified in the statute." In those cases it was contended that the public service companies involved did not possess, for various reasons, the right of eminent domain they were seeking to exercise and the question now under consideration was not raised. Under the express terms of the Act of 1921 it is only "upon application of such company" that the Commission may proceed to determine whether the powers conferred by the act may properly be exercised. This seems to contemplate proper corporate action by the directors authorizing the making of the application as such application must be the act of the corporation. In our opinion an application seeking approval of the exercise by a corporation of the sovereign right of eminent domain should not be based merely upon the

action of executive officers. As such action was taken in the present case by the board of directors of the Duquesne Light Company prior to final action by the Commission and as such action was a ratification of the filing of the petitions by its executive officers, we dismiss the assignments of error relating to this branch of the case.

The assignments of error are all overruled and the order of the Commission appealed from in this appeal is affirmed.