Pa. R. R. Co. et al., Appellants, v. P. S. C.

Argued March 23, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNING-HAM, BALDRIGE, STADTFELD and PARKER, JJ.

*John McI. Smith,* and with him *Wilhelm E. Shissler* and *W. Stephens Mayer,* for County of Cambria, appellant.

*John McI. Smith,* for The Pennsylvania Railroad Company, appellant.

*John Fox Weiss,* Counsel, and with him *E. Everett*

*Mather, Jr.,* Assistant Counsel, for The Public Service Commission, appellee.

OPINION BY BALDRIGE, J., May 4, 1932:

These appeals by the Pennsylvania Railroad Company and the County of Cambria impeach the validity of the order of the Public Service Commission on the ground of its unreasonableness.

A complaint was instituted by the Borough of Gallitzin, alleging that the present bridge over the tracks of the Pennsylvania Railroad is dangerous and inadequate to accommodate the travelling public. Prior to any hearing, a plan was prepared by the railroad company as a result of a number of engineers' conferences held by agreement and attended by the various parties involved in this proceeding. The following undisputed facts were developed at the hearing at which all the parties appeared.

In 1898 the Pennsylvania Railroad constructed the present Gallitzin bridge over its east bound tracks where South Main Street crosses the east bound tracks of the railroad. In the month of December, 1928, the railroad company, in moving a derrick, failed to lower its boom and, as a result, it collided with this bridge, moved it in an easterly direction about six inches, and damaged the structure so that it became dangerous to the travelling public. The old bridge is of a steel pony truss construction with wooden floors, having a length of 88 feet, 3 inches, between the bars, with a roadway 16 feet, 5 inches, wide, and sidewalks of a width of 5 feet on either side. There is a vertical clearance of 18 feet, 5 inches, from the underside of the structure to the top of the track. The grade on the north approach is 9.8 per cent and on the south approach 5 per cent.

The borough submitted a plan for the reconstruction of a bridge of substantially the same character and dimensions, and resting on the same foundations as

the old bridge, at an estimated cost of $20,650. The railroad company's plan was submitted and provided for the construction of a bridge in its present location at a grade raised sufficiently to provide 23 feet head room over the existing tracks; a 24-foot roadway with two 5-foot sidewalks; a maximum grade on the north approach of 8 per cent and on the south approach 5⅓ per cent. The estimated cost of construction thereof is $51,950 and the relocation of the approaches would require an appropriation of property at an estimated cost of $11,000. The railroad company assumed to pay the cost of the superstructure, amounting to $27,-700, and rebuild the construction and repair certain portions of the walls, requiring an expenditure of $3,300; move the signal bridge at an expense of $450, and improve the driveway toward their station, which would require an additional $1,600, amounting to a total cost of $33,050.

The commission found that the present bridge was inadequate and dangerous and that the plan of the Borough of Gallitzin would not sufficiently provide for the safety, accommodation and convenience of the public, and adopted the so-called Pennsylvania Railroad Company's plan and ordered that the railroad company furnish all the materials and do all the work necessary to complete the improvement at an estimated cost of $51,950, and pay one-third of the property damages estimated at $11,000. These assessments are subject to credit in the amounts of $500 and $15,000, which are to be paid to the railroad company by the Borough of Gallitzin and the Public Service Commission, respectively. It was further ordered that the County of Cambria pay all compensation for damages to the owners of property taken or injured and that the railroad company pay to the county, by way of reimbursement, an amount equal to 33⅓ per cent of the sum paid by the county.

It is true that all the parties in interest agreed to accept the borough plan. The approval of Mr. Leonard, engineer of bridges and buildings of the Pennsylvania Railroad, however, was with some reservation. He testified that the plan of the borough would be satisfactory so far as highway facilities are provided, but stated: "I would like to add just this one fact in connection with it. It is the policy of the railroad company in all new structures, wherever it is reasonably possible, without too much expense, to obtain a minimum of 22 feet head room over their tracks and in certain territory where future electrification is in mind, a minimum of 23 feet head room." The portal of the Gallitzin tunnel, about 2,000 feet east of this point, has a minimum vertical clearance at the present time of 16 feet, 3 inches, but the railroad company contemplates lowering the tracks so that it would have a minimum clearance of 18 feet, 1 inch, in the tunnel.

The appellants earnestly contend that the so-called Pennsylvania Railroad Company plan was put in evidence solely as a matter of information to the commission; that its adoption was not urged and the construction of such a bridge as called for puts an unwarranted heavy financial burden on them. The railroad company apparently did not insist on the adoption of the plan it prepared, but it may be reasonably assumed that its engineer is of the opinion that from a standpoint of convenience and safety it is preferable to the borough plan. Mr. Leonard testified on that point as follows: "Q. When you say, Mr. Leonard, that this is the proposed plan for the reconstruction of the bridge over the Pennsylvania Railroad tracks, what do you mean by that? A. I mean that this is the plan which has been prepared by us after consultation with the various parties, particularly with the engineering department of the Public Service Commission as to the de-

sirable and proper structure for this location." We conclude, therefore, that while the borough plan was acceptable, in the opinion of the railroad company's own engineer the more desirable plan was the one he prepared and presented. No doubt this opinion was based on contemplated improvements and for the further reason that whenever the clearance is less than approximately 21 feet, it is necessary to place warnings overhead to prevent brakemen riding on top of cars from being injured. It is very probable that Mr. Leonard's testimony influenced the commission in reaching their conclusion.

True, this bridge is not a part of a state highway, but it is in a municipality containing four to five thousand people and will, undoubtedly, be used by trucks and other motor vehicles which require a wider roadway than in times past. It is a well known fact that with the large trucks of modern vehicular traffic a 16-foot roadway is inadequate for safe and convenient traffic. In the building of such structures, not only the present, but the future needs must be considered. While the present width of the bridge may not be objectionable to' the railroad company, it is for the best interests of the Commonwealth to have its highways and bridges of a sufficient width to make them convenient and safe.

Considering the facts presented, we cannot say that there was such a clear abuse of discretion to hold that its order was unwarranted. It is not to be understood that we look with favor' upon imposing unnecessary expenditures that burden the railroads or the sub-divisions of this Commonwealth. Of course, if a bridge, meeting the requirements, could be built for $20,650, it is unreasonable to order the construction of a bridge costing $60,000. But, the Commonwealth, on the other hand, has the right to require that constructions used by the travelling public shall be ade-

quate and safe. The Public Service Company Law, Art. V, sec. 12, gives the commission the exclusive jurisdiction over the construction of overhead crossings "according to plans and specifications to be approved, and upon just and reasonable terms and conditions to be prescribed by the commission." We have frequently held that this court is not an administrative body with authority to substitute our judgment for that of the commission in questions of this character involving the exercise of sound discretion, except where there is a manifest and flagrant abuse thereof: Harmony Elec. Co. v. P. S. C., 71 Pa. Superior Ct. 355. Even though we may not be in entire accord with the conclusions reached, that is insufficient to disturb the order of the commission. As we have said in Shearer v. P. S. C., 99 Pa. Superior Ct. 386, where there is evidence to support the conclusion of the commission disposing of an administrative question, this court may not substitute its judgment for that of the commission.

The order is affirmed.