Kiely, Appellant, *v.* P. S. C. et al.

250

Argued December 14, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, and JAMES, JJ.

*Arnold H. Hirsch,* for appellant.

*Samuel Graff Miller,* with him *Harry H. Frank, John C. Kelley* and *Richard J. Beamish,* for appellee.

*Frank M. Hunter,* with him *Donald H. Hamilton,* for intervenor.

OPINION BY STADTFELD, J., January 29, 1937:

The appellant, Thomas J. Kiely, resides at 5622 North Uber Street, Philadelphia, Pennsylvania, and is

an operative builder. He was originally the owner of a tract of land bounded on the north by Chew Street, on the south by Olney Avenue, on the west by Twentieth Street, and on the east by Uber Street, in the City of Philadelphia.

The appellant constructed a row of houses fronting on Uber Street and bounded on the north by the said Chew Street, on the south by a ten feet wide driveway located on his property, and on the west by a twelve feet wide driveway bisecting said tract of land. A complaint was filed on May 3, 1933, by Thomas J. Kiely in which, in substance, it was averred that Intervening Appellee had refused to furnish electric service to the dwellings comprised in said row of houses unless and until Intervening Appellee's standard form of right of way agreement was executed by appellant and furnished to the Intervening Appellee. As a result of hearings held in this former case, the Commission handed down its report and order and supplemental and amendatory report and order, in which it approved a form of right of way agreement prepared by Intervening Appellee and submitted to appellant and which granted to the Intervening Appellee a right of way over the rears of the lots upon which said row of houses was constructed, as well as for a feed-in line from Twentieth Street. Pursuant to said reports and orders, the appellant did sign the said right of way agreement.

Subsequent to the aforesaid proceedings, and in February 1936, the appellant proceeded to develop the other half of his said tract of land and to construct thereon a row of houses, the rears of which were bounded by the aforesaid twelve feet wide driveway, which, as has been stated, forms the western boundary of the row of houses involved in the former Kiely case. This second row of houses fronts on Twentieth Street, is bounded on the north by Chew Street, on the south by

the aforesaid ten feet wide driveway, on the east by the aforesaid twelve feet wide driveway, and on the west by Twentieth Street. The type of construction of the row of houses involved in this case is substantially identical to the row of houses involved in the former Kiely case. The houses or residences involved in this proceeding, being twenty-two in number, are two stories in height and comprise a single solid row of dwellings divided by party walls. Each house is equipped with a rear basement garage underneath the first floor. Access to the garages is furnished by means of driveways leading from the garages into the twelve feet wide driveway, which divides the row of houses fronting on Twentieth Street involved in this proceeding from the row of houses fronting on North Uber Street involved in the former Kiely case. The said twelve feet wide driveway has an outlet on the north on Chew Street and on the south on Twentieth Street and North Uber Street by means of the aforesaid ten feet wide driveway which runs at right angles to the twelve feet wide driveway and which bounds the two rows of houses on the south.

Appellant introduced in evidence a plan of the development involved in this proceeding. The lots upon which the dwellings are erected are fifteen feet seven inches wide, and the depth is eighty feet. In front of each of the houses is a front yard or grass plot about twelve feet deep. The distance from the rear walls of the dwellings to the said twelve feet wide driveway is more than ten feet.

On February 28, 1936, the Intervening Appellee had submitted to appellant a proposed right-of-way agreement for the furnishment of electric service, which the latter refused to accept on account of alleged unreasonable conditions which formed the basis of the complaint filed on June 10, 1936.

On June 19, 1936, pending hearing on the complaint,

the district manager of Intervening Appellee's German-town District, wrote the appellant and enclosed two new documents. The first of these was an agreement granting to Intervening Appellee a right of way over the rears of the said twenty-two houses being constructed by appellant and was to be signed by the appellant in the event that he desired rear service. The second was a form of permission grant to be signed by appellant in the event that he desired service to be furnished to the fronts of said houses from Twentieth Street.

The right of way agreement sent to appellant and which was to be executed by him in the event that he desired rear construction, was identical in form to the right of way agreement executed by the appellant pursuant to the Commission's Report and Order and Supplemental and Amendatory Report and Order issued in the former Kiely case, involving the houses erected by appellant and fronting on Uber Street.

There are four methods of supplying electric service to the appellant: 1. Underground service from the front of the houses involved; 2. Underground service from the rear of the houses involved; 3. Aerial service from the public highway to the front of the houses involved; 4. Aerial service to the rears of the houses involved. Appellant testified before the commission that his preference was for underground service. He further testified, however, that he was unwilling to pay the excess cost to the Intervening Appellee of constructing facilities for underground service over the cost of constructing facilities for aerial service.

Respondent's Tariff Rule No. 3.6 provides as follows: "Customers desiring an underground service from overhead wires must bear the excess cost incident thereto. Specifications and terms for such construction will be furnished by the company on request."

The appellant indicated in his testimony at the hear-

ing that such front aerial service facilities would seriously detract from the appearance of the front of his dwellings and that between front aerial and rear aerial service, he preferred the latter. Appellant's real estate development is located outside Intervening Appellee's district for underground service, but underground service is available to appellant upon compliance with Intervening Appellee's Rule for such service above quoted.

The Public Service Commission, thereupon sustained the complaint as to the original agreement submitted and ordered the Philadelphia Electric Company to furnish rear aerial service to the appellant upon receipt of the usual service applications and grants of rights of way duly executed, delivered and acknowledged, authorizing the erection of the Philadelphia Electric Company's facilities on the rear walls of appellant's houses or on a pole line to be placed at a specified location on the properties, affecting the use of the rear yards and driveways as little as possible, together with any necessary service lines from said pole line to individual houses or pairs of houses. From that order this appeal was taken.

In the former Kiely case, referred to supra, the public Service Commission held "that if the Company is to be required to provide service to the rear of these properties, it must be left free to change its mode of service at its own discretion from wires fastened to the rears of the houses to others constructed upon a pole line separate from them."

The assignments of error relate to the alleged unreasonableness of the right of way or easement terms and conditions precedent to the location, construction and operation of such distribution facilities.

Appellant's first contention is that the Public Service Commission was arbitrary and unreasonable in giving to Philadelphia Electric Company the unrestricted

right and privilege to erect on appellant's premises electrical equipment of a character and voltage highly dangerous to the person and property of appellant and far beyond that reasonably necessary to supply service to his dwellings.

Appellant contends that under the form of right of way agreement approved by the Commission, the Philadelphia Electric Company has the unlimited right to erect on appellant's premises any and all kinds of poles, wires, transformers and other appurtenances, without regard for danger to the person or property of the occupants of his dwellings, and subject only to the electric company's judgment. He further states that 2300 volt, 66,000 volt or 220,000 volt lines may be attached to the rear walls of these houses, or to poles erected in the rear of the premises. Such a contention is without merit. The right of way agreement approved by the Commission contemplates the granting of a right of way for *"distribution purposes."* The right of way agreement approved by the Commission does not contemplate a right of way for *"transmission purposes."* The right of way agreement being restricted in its operation to distribution purposes, it is apparent that Intervening Appellee cannot utilize the right of way granted to carry such high voltages as indicated by the appellant. This matter is at all times under the control and regulation of the Commission.

The right of way agreement approved by the Commission in the case at bar does not grant a right of way over any portion of appellant's houses and lots which is not necessary for the construction and maintenance of facilities necessary and proper to supply electric service to appellant's real estate development. The Record indicates that Intervening Appellee has at all times been willing to supply appellant with

service from the public highway but that appellant refused to accept such service.

It has consistently been held that an electric public service company may exercise reasonable judgment in selecting its right of way. Quoting from the opinion of Judge CUNNINGHAM, speaking for the court in *Dickson v. Public Service Commission,* 89 Pa. Superior Ct. 126, 134 (1926) : "Manifestly, the selection of the route for the lines is a matter for the light company in the first instance and, unless it is shown that it proposes to exercise the powers conferred upon it wantonly, corruptly or capriciously, or that the rights of the land owner have been trifled with, or unreasonably disregarded, the law does not contemplate that the Commission should withhold its approval simply because another route might have been adopted. In *Biddle v. Wayne Water Works Company,* 190 Pa. 94, it was held that the discretion of a water company in adopting a route for its pipe lines and in condemning private property 'can only be restrained or controlled by the court where the condemnation or exercise of the state's right of eminent domain has been exercised in an unreasonable manner.' " See also *Biddle v. Public Service Commission,* 90 Pa. Superior Ct. 570 (1927).

Appellant's second contention is that the Public Service Commission failed to limit the term of the Philadelphia Electric Company's form of right of way agreement to a reasonable period of time.

It is manifestly impossible for the Intervening Appellee to adequately serve the public if its right of way for construction of its facilities may suddenly expire after the lapse of a few years. A utility is bound and required to furnish and to continue to furnish, adequate and proper service to the public at all times. There could be no continuity of service if the utility at some time in the future found itself without rights of way over which it could serve the public and in the

position of a trespasser on private property, due to the expiration of rights of way previously granted to it. It is within the domain of the Commission to decide whether or not the appellant should be served from the front or from the rear of his premises, and if from the rear, subject to such reasonable conditions as the circumstances require.

Appellant's third contention is that the Public Service Commission arbitrarily denied the right of appellant to indemnity for any injury or damage resulting from the Philadelphia Electric Company's dangerous construction on his premises.

This is based on the assumption that the Philadelphia Electric Company intends to erect a dangerous construction on his premises. No such evidence appears in the record in this case. On the contrary, the only facilities provided for on appellant's premises are those for distribution purposes and necessary to supply appellant and persons adjacent to his development with electric service.

Should person or property be injured or damaged through any fault of the Intervening Appellee by reason of the construction of its facilities over the rears of appellant's premises, it would be compelled to respond in damages to the persons suffering any loss thereby.

Appellant's fourth contention is that the Public Service Commission improperly relieved the Philadelphia Electric Company of the cost of relocating its electric construction which may interfere with improvements or alterations to appellant's dwellings. We understand from the brief of the Public Service Commission that such a provision had been inserted in another agreement which had been submitted to appellant prior to the one involved in this proceeding. It is also stated that the company would have no objection to insertion of such a clause in the agreement approved by the Commission.

Appellant's fifth contention is that the property value of the right of way provided for in the form of agreement approved by the Commission greatly outweighs the consideration offered appellant and threatens adversely to affect rate-payers. We do not think that this is directly involved in this proceeding.

It is because of the appellant's own refusal to accept service from the public highway that it becomes necessary to secure from him a right of way agreement so that service might be furnished from the rear. Two methods, that is, underground service from the front and underground service from the rear, have been eliminated because of appellant's refusal to pay to the Intervening Appellee the excess cost of installing underground facilities over the cost of installing aerial facilities in accordance with Intervening Appellee's Tariff Rule 3.6, hereinbefore referred to.

Appellant in his brief states: "As the front of appellant's premises abuts on a public street, it is submitted that an order on the electric company to install *underground* service to the *front* of the premises will obviate the necessity for a right-of-way agreement, and preclude the attendant evils."

The character of service suggested and desired by appellant can readily be obtained upon compliance by him with respondent's Rule No. 3.6, hereinbefore referred to. This, as he states "will obviate the necessity for a right of way agreement and preclude the attendant evils." What appellant seeks is the underground service without paying the differential required from all of its patrons. To permit the appellant to receive such underground service at no cost to him would not only be in direct violation of the Utility's Tariff Rules but would be discriminatory as against all of the Utility's other customers. In this connection it may also be proper to refer to Tariff Rule of Respondent, Rule S. 2 which provides: "Customers ap-

plying for the construction of an extension may be required to secure to, and for, the company, all necessary and convenient rights-of-way and to pay the costs incident thereto." The reasonableness of these rules, or either of them, has not been questioned.

In order to avoid duplication of the instrumentalities of service, and increasing the danger to the public generally, there must be some latitude given to the utility company in the rendition of this service. As stated in the report of the Commission in the former Kiely case, hereinbefore referred to: "Due to the fact that the company's entire distribution system is a network of lines, most of them fed or able to be fed from as many points as possible, it is in many cases difficult to tell exactly over what route one house is supplied. In times of emergency, it is stated, this line, even if ordinarily no other premises were served through it, might be needed at least temporarily to reach some other point. The company consequently contends that its rights of way must allow it the free right to shift its facilities from the rears of the houses to poles whenever it deems it necessary; that it must be free in locating the poles to place them at such intervals and at such points as the construction of service lines, the location of transformers and other matters may make desirable; and that it cannot be limited, without destruction of its flexibility of service, to the right to supply only these houses from this line ...... The Commission is not convinced that the company can be required, without a loss of flexibility and a consequent lowering of standards of service, as well as an increase of its costs, to extend facilities in this manner in places and subject to restrictions where it cannot make the fullest possible use of them. We think, consequently, that if the company is to be required to provide service to the rear of these properties, it must be left free to change its mode of service at its own discretion from

wires fastened to the rears of the houses to others constructed upon a pole line separate from them. It would likewise be free to interconnect, for the good of all, these lines with those serving other premises, in order that as units of facilities may go out of service, or as demands on the lines vary, the service provided may be as steady and free from fluctuation as is possible."

Some reference has been made on the application of the doctrine of res adjudicata in relation to the prior case before the Commission, involving the properties fronting on Uber Street. It is not necessary to discuss this phase, because we have decided this case upon its own merits. The decision in the other case, even if not conclusive, is at least advisory insofar as the facts in both cases are alike.

The question in this case is an administrative one which the law requires to be determined by the Public Service Commission. It is not for us to interfere with their finding when there is sufficient evidence to sustain their conclusion: see *Hoffman et al. v. P. S. C.* 99 Pa. Superior Ct. 417. The report of the commission fully justifies the order made. This court will not substitute its own judgment for that of the commission unless the order of the commission is clearly unreasonable and not in conformity with law or there is a flagrant abuse of discretion. This court cannot disturb this administrative discretion of the commission unless it clearly appears that the commission's action was both unreasonable and contrary to law. *Pennsylvania Power Co. v. Public Service Commission,* 112 Pa. Superior Ct., 500, 171 A. 412; *York Motor Express Co. v. Public Service Commission,* 111 Pa. Superior Ct. 169, 169 A., 396; *White Transit Co. v. Public Service Commission,* 108 Pa. Superior Ct. 490, 165 A. 523; *Penna. Railroad Co. v. Public Service Commission,* 105 Pa. Superior Ct. 60, 160 A. 161.

The order is affirmed and the appeal is dismissed.