John Benkart & Sons Company et al., Appellants,
  *v.* Pennsylvania Public Utility Commission.

**6**

Argued April 27, 1939.

Before KELLER, P. J. CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, RHODES and HIRT, JJ.

*John M. Walker,* with him *Joseph H. Reich,* for appellants.

*Thomas M. Kerrigan,* with him *Harry M. Showalter,* for appellee, Public Utility Commission.

*William George Negley,* for intervenors.

OPINION BY RHODES, J., July 13, 1939:

Frank Didomenico and M. T. Negley, a copartnership trading as Didomenico and Negley, applied to the Penn-

sylvania Public Utility Commission for a certificate of public convenience authorizing them to transport "heavy or bulky property which requires the use of a truck equipped with winch or other loading device, between points within the city of Pittsburgh and within a radius of 40 miles ......." and "between points within the city of Pittsburgh to points within 75 miles, when occasion requires the hauling of such heavy or bulky property." Protests against granting the application were filed by John Benkart & Sons Company, Moore-Flesher Hauling Company, W. J. Dillner Transfer & Storage Company, and John Himmer Transfer, Inc., among others. After a hearing before an examiner for the commission, the commission found that the service hereinafter detailed was necessary or proper for the service, accommodation, or convenience of the public, and granted applicants a certificate "To transport heavy or bulky property which requires the use of trucks equipped with winches or other loading devices, as a Class D carrier, between points in the City of Pittsburgh, Allegheny County, and within forty (40) miles, by the usually traveled highways, of the limits of said city"; and subject to the condition, inter alia, "That the certificate holders are limited and restricted to the operation of two (2) tractors, two (2) trailers and one (1) motor truck, the total maximum gross weight of which, with loads, shall not exceed one hundred nineteen thousand (119,000) pounds, as named and described in the Equipment Certificate."

Protestants above named have appealed.

A ground of objection common to all the protests was that there was no necessity for the proposed service, and that adequate service was being rendered by the present certificated carriers in the territory in which applicants proposed to serve. Appellants also contend that the evidence was not sufficient to support or justify the order of the commission. Appellants admit that the present certificated carriers are not entitled to a priv-

ilege in the nature of a monopoly, but submit that the public interest—that is, the service, accommodation, convenience, and safety of the public—is not safeguarded by the unwarranted enlargement of the competitive field.

We have often stated that in determining such matters as are involved in this appeal this court confines itself to the ultimate question as to whether the commission acted within its powers. *York Motor Express Co. v. P. S. C.,* 110 Pa. Superior Ct. 197, 168 A. 327. The order here deals with an administrative matter which this court may not disturb unless it is clearly shown to be without support in the evidence, or was so arbitrary, capricious, and unreasonable as to amount to error of law, or a violation of constitutional rights.[1] See *Steward v. P. S. C.,* 119 Pa. Superior Ct. 353, 181 A. 329.

In the order appealed from the commission found

---

[1] "Any appeal to the Superior Court shall be determined upon the record certified by the commission to the court. All evidence in such record so certified may be considered by the court regardless of any technical rule which might have rendered the same inadmissible, if originally offered in the trial of an action at law. The court may dismiss the appeal, or vacate the order complained of, in whole or in part. In case the order is wholly or partly vacated, the court may also, in its discretion, remand the matter to the commission for such further proceedings, not inconsistent with the decree, as in the opinion of the court justice may require. The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights. The costs resulting from any appeal shall be upon the appellant, unless the court shall make other disposition of the costs in its decree": Act of May 28, 1937, P. L. 1053, art. 11, §1107, 66 PS §1437.

"Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found, and shall remain conclusive upon all parties affected thereby, unless set aside, annulled, or modified in an appeal to the Superior Court taken as provided in this act": Act of May 28, 1937, P. L. 1053, art. 11, §1112, 66 PS §1442.

that the service to be rendered by the applicants was "necessary or proper for the service, accommodation, or convenience of the public."[2] There was competent testimony as to the need or demand for heavy hauling of the specialized type to be furnished by applicants. Appellants' witnesses also testified that there was a need for such service. Although there were other certificated carriers equipped to render such service in the territory involved, and testimony was introduced by appellants that such carriers had sufficient equipment and facilities to meet the public demands, the commission was not thereby obliged to refuse applicants a certificate of public convenience to render a similar service. See *York Motor Express Co. v. P. S. C.,* supra; *Steward v. P. S. C.,* supra. It was not necessary for the commission to find that the service of the applicants was absolutely indispensable, and we cannot say that there was no evidential support for a finding that applicants' service was reasonably necessary for the accommodation or convenience of the public. It appears from the record that applicants had adequate and proper equipment and facilities to render the proposed service, and were qualified financially and by experience to furnish adequate service to the public. As there was need for this highly specialized service in the territory involved, it was an administrative question for the commission's determination as to how many should be certified to supply that demand. *York Motor Express Company v. P. S. C.,* supra. To what extent there shall be competition in the intrastate transportation of freight and merchandise

---

[2] The Act of May 28, 1937, P. L. 1053, art. 2, §203, 66 PS §1123, provides in part: "A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public; and the commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable."

by common carrier is, for the most part, an administrative question which must be left to the discretion of the commission. *Beaver Valley Service Co. v. P. S. C. et al.,* 122 Pa. Superior Ct. 221, 223, 186 A. 304.

In determining whether the public interest would best be served by granting a certificate of public convenience to applicants the commission could properly take into consideration the evidence to the effect that Frank Didomenico, a member of the partnership involved in this appeal, and one of the applicants, had been actively engaged for 15 years in the type of transportation under consideration; that from 1934 to 1937 this business was conducted under authority of a certificate of public convenience held in the name of his wife, Olive Didomenico; that the business was actually operated by Frank Didomenico under this certificate, and it was with him that the public dealt; that specialized and expensive automotive equipment was acquired and used in the business; that applicants now own specialized equipment which can be used only in connection with heavy hauling business; that its value was $20,100. It appears from the record that on February 2, 1937, by reason of having failed to comply with the commission's insurance requirements the certificate held in the name of Olive Didomenico was canceled by the commission; but the testimony would seem to establish that the Didomenicos had no knowledge of this cancellation until March, 1938. On April 26, 1938, the application which is the basis of this appeal was filed in the name of the partnership. It is obvious, as the commission points out, that no new service was begun as the result of the granting of a certificate of public convenience to the applicants. Whether a certificate should be granted to the applicants was, under the facts, a question for the commission, and it is not our province to interfere with the discretion thus exercised by the commission.

We think that there was sufficient competent and

relevant evidence to support the order of the commission, and we do not find it so capricious, arbitrary, or unreasonable as to amount to error of law or constitute a violation of constitutional rights.

The appeal is dismissed, and the order of the Public Utility Commission is affirmed, at the cost of appellants.

CONCURRING OPINION BY KELLER, P. J.:

While if I had been the fact finding tribunal in this proceeding I would have refused the application because the service applied for was not shown to be necessary for the accommodation and convenience of the public, I recognize, for the reasons so well expressed by Judge RHODES, that the decision of the matter was an administrative one which should not be disturbed unless it was so arbitrary and unreasonable as to amount to error of law; and therefore I concur in the opinion and judgment.

It developed, however, on the argument that in the proceedings leading up to its decision, the commission had designated an examiner to take testimony, under section 7 of the Act of March 31, 1937, P. L. 160 [1]; and the examiner, instead of confining himself to the duties committed to him by statute, to wit, administering oaths, examining witnesses and receiving evidence, filed a report, which did not become part of the record, and made recommendations which were adopted by the commission. This he was without legal authority to do, and I refer to the matter here in order that the practice —if such it has become—will be discontinued for the future. Whatever may be the custom in other juris-

---

[1] "In any investigation, inquiry or hearing, the commission may designate a special agent or examiner who shall have the power to administer oaths and examine witnesses and receive evidence in any locality which the commission ...... may designate ......" Act of March 31, 1937, P. L. 160, sec. 7. "The commission may authorize the chairman ...... (3) to assign cases to special agents or examiners for the taking and receiving of evidence". Ibid, sec. 8.

dictions, in this Commonwealth the function of an examiner to take testimony is limited to his statutory authority, and he is given no power to pass on facts developed or make decisions or recommendations with regard to them, unless specially authorized in the statute to do so. See the discussion by Mr. Justice DEAN on the province of Examiners in divorce in *Middleton v. Middleton,* 187 Pa. 612, 614, 615, 41 A. 291, before the passage of the Acts authorizing Masters in divorce to report their opinion of the case.

Public Utility Commissioners are important officers, appointed by the Governor, subject to confirmation by the senate. They are representatives of the *legislature* in important fact finding matters, and cannot be removed by the Governor at will: *Com. ex rel. Attorney General v. Benn,* 284 Pa. 421, 131 A. 253. They perform, in some respects, quasi judicial duties and must take an official oath. Section 3 of the Act above mentioned disqualifies *many* persons from serving as a commissioner. It was never contemplated that their fact finding powers and duties, which are in some circumstances made final, should be shifted even provisionally to examiners appointed by them to relieve them of the drudgery of taking testimony. Dr. Roscoe Pound in his report as Chairman of the Special Committee on Administrative Law to the American Bar Association for 1938, in referring to the defects in Administrative Law against which safeguards are required, mentioned: "(2) A tendency to decide on the basis of matters not before the tribunal or on evidence not produced. A common form in which this tendency is manifested is to act on secret reports of inspectors and examiners."

I call the matter now to the attention of the Commission in order that there may be no further misconception of the duties to be performed by Examiners designated pursuant to the Act of 1937, supra.