West Penn Railways Company, Appellant, v.
Pennsylvania Public Utility Commission.

Argued May 1, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Edward O. Tabor,* with him *Charles L. McCormick,* for appellant.

*Samuel Graff Miller,* with him *Solomon Freedman* and *Harry M. Showalter,* for appellee.

*Thomas C. Evans,* with him *Harry K. Daugherty, George W. Keitel,* Assistant Deputy Attorney General, and *Claude T. Reno,* Attorney General, for intervenor.

*Frank Butler,* Assistant County Solicitor, with him *Walter P. Smart,* County Solicitor, for intervenor.

OPINION BY RHODES, J., October 7, 1940:

This is the second time this case has been brought before us by the West Penn Railways Company, the appellant. On the first appeal we set aside six conditions in the order of the commission, and remitted the record for further hearing; our opinion is reported in *West Penn Railways Co. v. Pennsylvania Public Utility Commission,* 135 Pa. Superior Ct. 89, 4 A. 2d 545, and the essential facts appearing in the record are stated therein.

On appeal from the commission's first order we granted a supersedeas on June 2, 1938, allowing appellant to cease its operations in the McKeesport division upon its executing a $70,000 bond conditioned upon the performance by appellant of such obligations as to removal of facilities, paving, and burning off rail heads as might be finally determined upon appeal, and conditioned further that it kept its rails, paving, and facilities along the line of its tracks here involved in safe condition. Upon remission of the record, the commission thereafter set the case down for further hearing to determine what, if any, conditions were to be imposed upon appellant in granting approval of abandonment in the McKeesport division outside the city of McKeesport; the conditions to be in conformity with existing franchises, contractual obligations and legal duties of appellant, and such as would not "raise the standard of [appellant's] duty fixed by law," or "interfere with the constitutional and statutory powers of the municipalities."

At the rehearing on May 10, 1939, the Department of Highways, County of Allegheny, and municipal subdivisions affected by the abandonment of appellant's line appeared as interested parties. Testimony was taken with respect to conditions of the tracks, etc., and appellant's franchises and contracts with municipal authorities were put in evidence. At the rehearing there was ample testimony showing that the abandoned track area involved caused hazard to the traveling public.

Based on the evidence, the commission, by the supplemental order dated December 18, 1939, promulgated twelve conditions to its consent to abandonment by appellant of the McKeesport division outside the city of McKeesport, requiring removal of tracks, ties and other facilities, removal and burning off rail heads, paving, resurfacing between rails where conditions of the road bed were hazardous to public travel, and in some cases the granting of quitclaim deeds of rails and ties to municipalities, such procedure to be optional with appellant in lieu of removing such rails and ties and resurfacing the affected area, and surrendering existing franchises.

From this supplemental order appellant took this appeal. The Department of Highways and the County of Allegheny intervened as appellees.

Appellant, prior to the second hearing before the commission, in pursuance to the above supersedeas, removed certain essential portions of its track and facilities and presently maintains, as part of its argument, that, since appellant has ceased to operate its facilities in the McKeesport division of appellant company, it is there not a public utility within the meaning of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1101 et seq.; that the commission's jurisdiction in the present case is limited to transportation service; and that the moment such service ended the jurisdiction of the commission ended.

But the questions involved as stated by appellant present no question not raised by it in the first appeal.[1] We held in *West Penn Railways Co. v. Pennsylvania Public Utility Commission,* supra, 135 Pa. Superior Ct. 89, at page 100, 4 A. 2d 545, at page 550, that: "The commission may, under section 203(a), 66 PS §1123, of the Public Utility Law, attach conditions to abandonment of the tracks and service of a street railway company, but such conditions cannot raise the standard of duty fixed by law. The conditions which may be imposed must be reasonable and be supported by the evidence, and they cannot interfere with the constitutional and statutory powers of the municipalities." We did not sustain the conditions in the order, but we remitted the record that the commission might attach proper conditions to its consent to the abandonment of a portion of appellant's line and service, and we held that the commission could take into consideration appellant's franchises and contractual obligations so that such conditions might be proper under the franchises and contracts which it had with various municipal authorities.

Here, as on the first appeal, appellant argues that the commission may not legally condition abandonment except as the conditions are related to service. We repudiated appellant's previous argument that there was any such limitation of the commission's powers, and we do so again.

And appellant, for the second time in this contro-

---

[1] In the first appeal, No. 55, April Term, 1939, the second question involved, as stated by appellant, related to the commission's jurisdiction. In the present appeal the three questions involved, as stated by appellant, all pertain to the commission's jurisdiction.

Appellant uses the term "jurisdiction" as relating to the commission's power "after abandonment." On page 22 of appellant's brief in the present case it says: "The issue is: Does the Public Utility Commission have jurisdiction to determine those paving obligations after abandonment, and to enforce them?"

versy, questions the commission's jurisdiction and power to impose, in effect, any conditions, and presents the same argument in extenso as it offered to us before.

Appellant does not submit as a question involved the justness or reasonableness of the conditions imposed by the commission in its supplemental order of December 18, 1939, but again argues that they are unjust and unreasonable because beyond the power of the commission to impose.

The power of the commission, in granting a certificate of public convenience for abandonment, to impose conditions not confined to service was decided in appellant's first appeal. The commission's power to impose conditions in granting approval of abandonment of a portion of appellant's line and service under sections 202 and 203 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §§1122, 1123, is not limited to matters of service, but conditions may on proper occasion relate to the safety of the public.

If we erred in holding in *West Penn Railways Co. v. Pennsylvania Public Utility Commission,* supra, that the commission had this power, and in remitting the record for the imposition of proper conditions (which direction the commission now has followed), then appellant should have sought a review of our decision by the Supreme Court of Pennsylvania. No petition for an allocatur was presented to the Supreme Court, nor did appellant seek a reargument before us. Without going further, this appeal might well be dismissed. See *Eaton v. New York Life Insurance Co. of New York,* 318 Pa. 532, 179 A. 67; *Ottman et al. v. Albert Co. et al.,* 327 Pa. 49, 60, 61, 192 A. 897 (concurring opinion); *Reamer's Estate,* 331 Pa. 117, 124, 200 A. 35; *Bolton v. Hey et al.,* 168 Pa. 418, 421, 31 A. 1097; *Cowen et al. v. Pennsylvania Plate Glass Co.,* 188 Pa. 542, 544, 41 A. 615. It is elementary that the scope of an appeal is limited to the statement of questions involved, and only

assignments of error encompassed therein may be considered. *Commonwealth v. Cauffiel*, 298 Pa. 319, 148 A. 311.

We are inclined to believe that appreciation of the issue has been obscured rather than simplified by appellant's argument. One of its contentions throughout this controversy, and in both appeals, has been that the commission has no jurisdiction over appellant's "paving obligations after abandonment," or that the commission has no authority to fix paving and rail removal conditions after abandonment. We think the real issue may be stated thus: Can the commission impose just and reasonable conditions in granting a certificate of public convenience evidencing the approval of the commission for a public utility to abandon a part of its line and service, which conditions are not confined to transportation services, but relate to the safety of the general traveling public? Appellant's position on this basic question may be found in its argument that "the instant it abandoned service [which was by virtue of the supersedeas], it ceased to be a utility, within the meaning of the statute"; that "the commission has jurisdiction over the safety of that part of the 'public' who are patrons that use the facilities of the utility, as distinguished from the safety of the general public"; that "since there are here no patrons whose safety the commission is to guard, there is no 'safety' which is under the commission's jurisdiction"; that the "condition of a highway not connected with public service, is no concern of the commission."

The questions involved as stated by appellant and the argument which is predicated thereon appear to be based on an erroneous assumption that the conditions imposed by the commission are after abandonment, or have no relation to abandonment. Appellant ignores the fact that the commission's order related to appellant as an operating company, and not as a utility which had

previously been permitted by the commission unconditionally to cease operations. The conditions which the commission has imposed in its supplemental order are also part of the order allowing abandonment; they are not conditions imposed after abandonment; they are an integral part of the order. Appellant would accept that portion of the order of the commission which permits abandonment, and repudiate the balance; it would accept the privileges advantageous and profitable to itself, and refuse to perform the reciprocal duties and obligations which the commission has found to be necessary in the public interest and for the maintenance of the public safety.

Appellant argues that it is not an operating public utility in the division involved; that it has stopped doing business; and that therefore all supervision and all regulation by the commission has ceased. Under the subterfuge of discontinuance of service it attempts to escape the operation of the public utility law. It seems unmindful that this court granted appellant a supersedeas pending disposition of the case. Clearly the supersedeas did not imply that discontinuance of service should be divorced from the conditions deemed reasonable in connection with the abandonment of the trolley service, but on the contrary definitely directed appellant to keep its facilities in safe condition pending final determination, and was conditioned upon its performance of such obligations as to the removal of facilities, paving, and burning off rail heads as might be determined. See article 11, §1103, of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1433. However, appellant seeks to use the present status, which is by virtue of the supersedeas, as a defense to the performance of any conditions. It would be a new doctrine which would permit a public utility to escape its obligations under the statute by merely discontinuing service. Likewise, it would be an anomalous situa-

tion to permit a public utility to be given the right to discontinue service because of a supersedeas, granted by the grace of this court, by which rights, later to be determined, were frozen, and then accept the argument on the part of the public utility to say that it is therefore no longer under the jurisdiction of the commission or subject to the public utility law because it has discontinued service.

We are not unmindful that the commission's power to act must be found in the express words of the statute or in the necessary implication thereof. *Citizens Passenger Railway Co. v. Public Service Commission et al.,* 271 Pa. 39, 54, 114 A. 642; *West Penn Railways Co. v. Pennsylvania Public Utilities Commission,* supra, p. 99. The Public Utility Law, supra, art. 2, §202, 66 PS §1122, so far as pertinent to the propriety of the supplemental order, provides: "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful: ...... (d) For any public utility to dissolve, or to abandon or surrender, in whole or in part, any service, right, power, franchise, or privilege: ......" Section 203(a), 66 PS §1123(a), of this act also provides: "A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or *safety* of the public; and *the commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable.*" (Italics supplied.) This is a specific grant of power to the commission to properly safeguard the public interest as to safety, as well as to service.

Under the common law it was a utility's duty, upon abandonment of its tracks and services, to remove the tracks and restore the invaded highway. See 60 Corpus

Juris 366, §265. See, also, *Reading v. United Traction
Co.,* 202 Pa. 571, 52 A. 106; *Chambersburg Borough v.
Chambersburg & Gettysburg Electric Ry. Co.,* 258 Pa.
57, 101 A. 922. This could be changed by the grant or
by municipal consent. *Reading v. United Traction Co.,*
215 Pa. 250, 255, 64 A. 446. Abandonment by a utility
of its facilities in a street or highway may be dangerous
to the public, and create a nuisance. *Village of Still-
water v. Hudson Valley Railway Co. et al.,* 229 App.
Div. 41, 241 N. Y. S. 569, 255 N. Y. 144, 174 N. E. 306.
As said in the *City of Buffalo v. International Railway
Co.,* 240 N. Y. S. 113, at page 116, affirmed 249 N. Y. S.
929: "Tracks of a railway in any street are an impair-
ment to vehicular traffic and a danger in wet and
slippery weather, as compared with a street free from
tracks."

The record discloses no franchises under which ap-
pellant constructed and operated its McKeesport divi-
sion containing specific provisions with reference to
procedure to be followed upon abandonment of tracks
and service. An agreement [2] of December 4, 1937, between
appellant and the county of Allegheny, an intervening
appellee, is in evidence. No franchise or contract with
any municipality involved relieves appellant, upon the
abandonment of its lines and service, of the responsi-
bility for removal of its facilities and the restoration
of the track area which they occupy. Nor does appel-
lant contend that the conditions imposed by the com-
mission conflict with the terms of any agreement, nor
does it say such conditions are not proper under any
contract or franchise with any municipality.

Section 203(a) of the Public Utility Law, 66 PS

---

[2] Appellant "renounced and denounced" this agreement at the
last hearing before the commission on May 10, 1939. The agree-
ment provided for the restoration of paving by appellant of the
county highways of the county of Allegheny in the area affected,
upon abandonment of its lines and service.

§1123(a), it will be observed, contains the words "necessary or proper for the service, accommodation, convenience, or safety of the public." With respect to the certificate of public convenience issued in abandonment proceedings, a condition relating to convenience would be one providing that substitute service be furnished; a condition with reference to safety would be one providing for protecting the public from the existence in place of facilities of the abandoning company. If the commission has no power to control the disposition of its facilities by an abandoning company, there is no purpose in the use of the word "safety" in that section in the Public Utility Law, in so far as it applies to abandonment.

The plain import of the words "the commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable" in section 203(a), 66 PS §1123(a), is to give authority to the commission to impose conditions which will properly safeguard, under the particular circumstances, the public interest as to safety. The only limitation is that the conditions imposed must be just and reasonable. Appellant wishes to escape the clear meaning and force of section 203(a) of the Public Utility Law, 66 PS §1123(a), by limiting the conditions which the legislature has authorized and empowered the commission to impose on abandonment to those affecting service. This argument, in our judgment, is grounded on an erroneous premise that the subject-matter within the commission's jurisdiction can never be the safety of the general traveling public, but must be limited to service or to safety or convenience of the public served. From this it argues that therefore the conditions which can be imposed under section 203(a) of the Public Utility Law, 66 PS §1123(a), must be confined to service, and the safety of the general traveling public may not be considered. Not only would appellant's construction make much of

that section meaningless, but appellant's contention from which its argument springs is not based on either the Public Utility Law or judicial authority. See sections 409 and 413 of the Public Utility Law, 66 PS §§1179, 1183. In *Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission*, 136 Pa. Superior Ct. 1, at page 4, 7 A. 2d 86, at page 87, this court said: "The State, in the exercise of its police power, has entrusted to the Public Utility Commission, just as it had formerly to the Public Service Commission, broad powers in respect of the crossing of facilities of utilities and particularly of the crossing of highways and railroads including the power to determine 'the manner and conditions in or under which such crossings shall be maintained, operated and protected to effectuate the prevention of accidents and the promotion of the safety of the public.'" The public, whose safety is to be promoted in such a case, is not only that portion of the public which the utilities serve, but the general public which may come in contact with the facilities of the utilities. As expressed by the Attorney General of the Commonwealth, in his formal opinion No. 197, under date of July 1, 1936 (Opinions of Attorney General, 1935-1936, page 142, 84 Pittsburgh Legal Journal 535, at page 536): "It would be a ridiculous commentary upon our system of government to rule that the Public Service Commission is interested only in the safety of the portion of the public which travels upon the utilities under its supervision, to the detriment and danger of the balance of the traveling public. Such an interpretation would permit a street railway company to abandon service and go out 'of existence without fulfilling its common law obligation to restore the street, and the commission, by granting permission to abandon service, would be preventing in many cases the enforcement of this lawful obligation. Clearly, the legislature never intended such absurd consequences."

Section 401 of the Public Utility Law, 66 PS §1171, requires every public utility to furnish and maintain safe facilities, and to make "all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such . . . . . . facilities as shall be necessary or proper for the . . . . . . safety of its patrons, employes, and the public." If we follow appellant's contention that "public" means only those who use the services of the utility, the word "patrons" becomes superfluous and meaningless. No word of a statute is to be left meaningless unless no other construction is possible. *Commonwealth ex rel. Meinzer v. Smith,* 118 Pa. Superior Ct. 250, 180 A. 179; *Easby's Petition,* 124 Pa. Superior Ct. 578, 189 A. 548, affirmed 326 Pa. 511, 192 A. 646.

"Under the provisions of the Public Utility Law . . . . . ., the commission is to determine whether the abandonment of a public utility's service, or any part thereof, is necessary or proper—that is, advantageous— for the service, accommodation, convenience or safety of the public": *West Penn Railways Co. v. Pennsylvania Public Utility Commission,* supra, 135 Pa. Superior Ct. 89, at page 95, 4 A. 2d 545, at page 548. In determining the question as to whether abandonment should be allowed, it is the patrons—the public who use the service—who are to be considered. The commission, when taking into consideration what conditions are to be imposed before abandonment will be allowed, can and should consider the safety of the traveling public who use the highways. The imaginary fragments and the arbitrary exactitude for which appellant contends cannot be found in our opinion in the first West Penn Railways Company case, supra. The commission found that abandonment of appellant's railway in the McKeesport division was necessary and proper for the service, accommodation, convenience, and safety of the public. In its order, however, the commission attached condi-

tions which we set aside for the reasons therein stated. The commission's error was the imposition of conditions solely on the basis of a declared policy, unsupported by findings of fact and in derogation of contract rights. The commission has now found that the portion of the highway occupied by appellant's tracks in the McKeesport division outside the city of McKeesport, is in bad condition and jeopardizes the safety of the traveling public. There is ample testimony in the record to support its findings, and appellant does not complain that the findings do not support the order. There was evidence to show that the tracks of appellant railway were an impairment to vehicular traffic and a danger especially when wet and slippery. Appellant does not even argue that the imposed conditions are unreasonable (apart from the power of the commission to impose them) with the exception of the conditions relating to burning off of the tops of rails, and requiring the execution of quitclaim deeds. As to these latter conditions, the commission, informed and advised by its bureau of engineering, which in turn is qualified through years of experience with exactly the type of problem involved, has determined that a safe and proper economical method of rendering certain portions of highway safe for public travel is to provide for the burning off of rail heads, without complete removal of the rail, which latter method is much more expensive and requires much more time. The removal of rail heads in lieu of the entire removal of tracks has occurred frequently in connection with removal of tracks ordered by the commission in abandonment proceedings. With reference to conditions which involve the alternative suggestion that quitclaim deed be given by appellant, it need only be pointed out that the quitclaim deed clauses are optional, and that appellant, if it does not desire to remove the rails itself, in all reasonableness, should be required to transfer its claims to the rails so that they may be removed by others.

Upon this state of facts, we cannot say that the conditions are unreasonable. *Pennsylvania Railroad Co. et al. v. Public Service Commission,* 105 Pa. Superior Ct. 60, 66, 160 A. 161. A commission's order, based on competent and relevant evidence, will not be disturbed by this court unless it is so capricious, arbitrary, and unreasonable as to amount to error of law, or a violation of constitutional rights. *John Benkart & Sons Co. et al. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 5, 8, 7 A. 2d 584.

It is a principle that does not need to be restated that the commission does not have power generally over public safety as a policy; and the conditions which it imposes must be within the express or implied power of the commission conferred by statute. But the act does provide for public safety in connection with utilities in their operation and on abandonment, and the word "safety" as used in the act is not, as appellant says, always limited to the safety of the public which uses the service and facilities of the utility company, in this case the patrons or passengers of appellant. The imposition of conditions for removal of hazards and resulting dangers in granting abandonment is proper and within the power of the commission if there is evidence to support them, if they are just and reasonable, and if they are proper under the franchises, contracts, and common law duties of the utility. For determination of what conditions may be just and reasonable under the circumstances, the commission may consider the franchises and contracts of appellant with the municipal authorities. It was for this purpose that the record was remitted to the commission on the prior appeal. The commission cannot and did not attempt to adjudicate any contractual obligations. The commission cannot fix the respective contractual rights of the parties, but the commission may look to the franchises, contracts, and agreements with the municipal authorities in the

determination of limitation of conditions to be imposed for the public safety on abandonment of the utility's service. It is not reasonable to assume that a utility on the abandonment of its service and the discontinuance of its operation cannot be required as a condition to leave its facilities in such shape as not to be a plain hazard to the public, if such conditions are limited so as not to raise the utility's legal duty.

We reiterate what we said in the prior opinion that the adjudication of contractual rights and obligations is for the courts, and that they are enforceable by judicial process, whether the commission gives its consent to a utility to abandon its service, with or without conditions. "The commission had the power, in granting the certificate of public convenience for abandonment under section 202(d), to attach reasonable conditions to its consent, so long as they were proper under the company's franchise or under contracts previously entered into by it with the various municipal authorities. Section 203(a), 66 PS §1123(a) ; *West Penn Rwys. Co. v. P. U. C.,* supra, 135 Pa. Superior Ct. at page 96, 4 A. 2d at page 545": *Jennings v. Pennsylvania Public Utility Commission et al.,* 140 Pa. Superior Ct. 569, at page 577, 14 A. 2d 882, at page 885.

It was not the intention of the legislature that the commission be impotent in the sphere of its conferred jurisdiction. Acceptance of appellant's contentions would make it so. Appellant's interpretation of the scope of its own rights and prerogatives would result in the subordination of the public interest largely to a utility's discretionary action; its view of the commission's jurisdiction and power over the matter of abandonment is inconsistent with necessary and reasonable administrative control over a utility's application for a certificate of public convenience evidencing the commission's approval of abandonment of its service in whole or in part. We take a different view from appellant of

the scope of the power delegated to the commission as well as to the extent of appellant's discretionary conduct. Administrative tribunals for the regulation of utilities are the outgrowth of conditions resulting to some extent at least from the theories which appellant apparently believes should still prevail.

But we do not think that the commission's power is as impotent as appellant contends, and that the prescribing of conditions in connection with abandonment is virtually limited to service by the utility. If section 203(a), 66 PS §1123(a), has any substance, it means that the legislature intended to maintain, through administrative control, grip over utilities which request permission to abandon their facilities and discontinue service so that their conduct may not create new hazards and jeopardize the safety of the public generally. Conditions may be imposed which are applicable to the particular situation, and which arise therefrom if sustained by the evidence, and if they are just and reasonable. If the commission has no power to condition abandonment of a utility's service and facilities, except as the conditions imposed are virtually limited to substitute service, as appellant seems to contend, then the exercise of the commission's power under section 202 of the Public Utility Law, 66 PS §1122, to allow a public utility to abandon any service, in whole or in part, would create hazards rather than be for the public safety. Such a construction would not only be absurd, but it would ignore the legislative policy as expressed in the statute, and it would "turn back the clock" on the development of administrative law.

We are all of the opinion that the order of the commission should be affirmed, and the appeal dismissed.

Order of the commission is affirmed, and appeal is dismissed at the cost of appellant.