Sando, etc., v. Milk Control Commission. No. 2

R. A. *Livingston*, for appellant.
*William F. Schutte*, for appellee.

FINE, J., February 10, 1943.—On December 4, 1941, the Milk Control Commission issued a citation against Daniel R. Sando, appellant milk dealer, to show cause why his dealer's license should not be revoked or suspended. The reasons set forth in the citation were:

"1. Failure to account and make payment for milk purchased or received from milk producers resulting in underpayments to the latter in the sum of $532.14, during the period from July 1, 1940, and including August 31, 1941.

"2. Failure to keep within the aforesaid period records as required by the Milk Control Law and such other records and information as the commission deems necessary for the proper enforcement of said law.

"3. Continued conduct during the aforesaid period as to manifest an intention to deceive and defraud producers selling milk to him.

"4. Failure to prepare and file with the Milk Control Commission on forms prescribed and furnished, monthly reports for the aforesaid period."

After hearing on December 15, 1941, the commission made numerous findings of fact, concluded and ordered:

"1. That the defendant milk dealer Daniel R. Sando, trading as Standard Milk, shall pay to the commission the sum of $532.14, to be applied by the commission to the producers to whom the said defendant made underpayments for the period set forth in the citation.

"2. That milk dealer's license no. 3559 issued to the said defendant for the year May 1, 1941, to April 30, 1942, inclusive, be and is hereby revoked."

The sole question involved here is whether there is substantial testimony to sustain the findings of the commission. As we stated in Sando, etc., v. Pennsylvania Milk Control Commission, 41 D. & C. 391, 395:

" 'Upon any appeal the court shall determine whether or not the order appealed from is reasonable and in conformity with law. The appellant shall have the burden of proving that an order of the commission is unreasonable or illegal. . . .' "

In J. Benkart & Sons Co. et al. v. Pennsylvania Public Utility Commission, 137 Pa. Superior Ct. 5, 8, the court said:

"We have often stated that in determining such matters as are involved in this appeal this court confines itself to the ultimate question as to whether the commission acted within its powers. *York Motor Express Co. v. P. S. C.*, 110 Pa. Superior Ct. 197, 168 A. 327. The order here deals with an administrative matter which this court may not disturb unless it is clearly shown to be without support in the evidence, or was so arbitrary, capricious, and unreasonable as to amount to error of law, or a violation of constitutional rights. See *Steward v. P. S. C.*, 119 Pa. Superior Ct. 353, 181 A. 329."

There was ample testimony to substantiate the board's findings of fact. No testimony was offered by appellant to disprove or contradict the testimony which was adduced against him. His testimony was two pages in length and solely to the effect that he paid for the number of quarts of milk which appeared on his records, all of which is admitted by the commission and has little or no bearing on the charges for which he was cited. The vice here is that he did not keep an accurate record of all milk received, there being an excess over the amount appearing on appellant's records for which the producers received nothing.

As this is the second time appellant has appeared in these courts in like proceedings involving almost identical facts, we are more concerned with the third charge in the citation and the penalty therefor. In addition to the two appeals of the present nature by this appellant, in which the conclusions of the commission were amply substantiated by evidence showing an utter disregard for the Milk Control Law and regulations pursuant thereto, Sando was adjudged guilty by Alderman Frank Brown of Wilkes-Barre, this county, for having terminated a milk purchase agreement without due notice in violation of Official General Order No. B-1, and contrary to sections 608 and 806 of the Milk Control Law of April 28, 1937, P. L. 417, and was directed to pay a fine of $150 and costs of proceedings or to undergo 30 days' imprisonment. On appeal to the court of quarter sessions, the decision of the alderman was sustained. Such course of conduct manifested an intention on the part of the dealer to deceive and defraud producers and demands strict and vigorous action by the commission. If the penalty seems severe to this appellant he has only himself to blame. If the commission were to do less it would defeat the purpose of the Milk Control Law. The action of the commission is well summarized in its discussion, to wit:

"The commission acting as a jury has no doubt that the defendant committed the four violations set forth in the citation. The witnesses for the Commonwealth were specific in their testimony. The defendant offered very little testimony in his own behalf. He offered checks into evidence showing certain amounts paid to the four producers. These checks in no manner contradicted the testimony of the Commonwealth. He gave a general denial to the third paragraph count of the citation without offering anything specifically. He gave no defense whatever to the first, second and fourth counts of the citation. . . .

"To allow the defendant to continue as a milk dealer would be in the words of the preamble of the Milk Control Act of April 28, 1937, P. L. 417, 'a relaxation of control' which would 'cause a return to the unhealthful, uneconomic, deceptive and destructive practices of the past with respect to this paramount industry upon which the health and welfare of the Commonwealth largely depends' and in accordance with the next paragraph of the said preamble 'it is necessary to prevent fraud and imposition upon producers.' "

This appeal from the order of the commission, dated December 28, 1941, involving inter alia, a revocation of the dealer's license for the year May 1, 1941, to April 30, 1942, was heard by this court in January 1943. The revocation order is, therefore, moot. If, perchance, a renewal of the license was granted for the year May 1, 1942, to April 30, 1943 (we have found in the files no order of this court permitting this appeal to act as a supersedeas), any action thereon must be initiated by the commission.

Now, February 10, 1943, the appeal of Daniel R. Sando is dismissed, and that portion of the order directing him to pay to the commission the sum of $532.14, to be applied to the producers to whom the said defendant made underpayments, is affirmed.