Chemical Leaman Tank Lines, Inc. et al.,
Appellants, *v.* Pennsylvania Public
Utility Commission.

Argued March 21, 1963. Before Rhodes, P. J., Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ.

*Robert H. Young,* with him *William E. Zeiter,* and *Morgan, Lewis & Bockius,* for appellants.

*Miles Warner,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Christian V. Graf,* for intervening appellee.

*Robert J. Stewart,* with him *Spencer R. Liverant,* for intervening appellee.

*Gilbert Nurick,* with him *Lockwood W. Fogg, Jr., Robert H. Griswold,* and *McNees, Wallace & Nurick,* for intervening appellees.

OPINION BY RHODES, P. J., June 12, 1963:
This is an appeal from an order of the Pennsylvania Public Utility Commission dated August 27, 1962, granting new rights to three railroad motor carrier subsidiaries and enlarging existing rights of two inde-

pendent motor carriers to permit them to transport cement in bulk, bags, or containers.[1]

---

[1] The rights granted by the commission's order of August 27, 1962, are as follows:

(a) Black Diamond Transport Company. A. 86381, Folder 2—

"To transport, as a Class D carrier, bulk cement in tank-type or hopper-type vehicles and cement in bags and packages or other containers from points in the Townships of Whitehall and North Whitehall, Lehigh County, and the Borough of Stockertown, Northampton County, to points in Pennsylvania; and the return of rejected shipments, empty containers or such other incidental facilities used in transporting cement."

(b) Pennsylvania Truck Lines, Inc. A. 24371, Folders 179-180-181—

"To transport, as a Class D carrier, Portland, hydraulic and masonry cement, in bulk in tank-type or hopper-type vehicles, and such cement in bags, packages or other containers from the plant of Medusa Portland Cement Company in the Township of West Manchester, York County, to points in Pennsylvania; and the return of empty containers and other incidental facilities used in the transportation of cement.

"To transport, as a Class D carrier, Portland, hydraulic and masonry cement, in bulk in tank-type or hopper-type vehicles, and such cement in bags, packages or other containers, from the plant of Alpha Portland Cement Company in the village of Martins Creek, Northampton County, to points in Pennsylvania; and the return of empty containers and other incidental facilities used in the trans·portation of cement.

"To transport, as a Class D carrier, Portland, hydraulic and masonry cement, in bulk in tank-type or hopper-type vehicles, and such cement in bags, packages or other containers from the plant of Allentown Portland Cement Company in the Borough of West Conshohocken and the Township of Upper Merion, Montgomery County, to points in Pennsylvania; and the return of empty and other incidental facilities used in the transportation of cement."

(c) Reading Dispatch, Inc. A. 86582, Folder 2—

"To transport, as a Class D carrier, cement in bulk in tank-type or hopper-type vehicles or containers and cement in bags, packages or other containers from points in the Township of Maidencreek, Berks County, the Borough of West Conshohocken and the Township of Upper Merion, Montgomery County, the Borough of Coplay and the Townships of Upper Macungie, Whitehall

The appeal was taken by Chemical Leaman Tank Lines, Inc., E. Brooke Matlack, Inc., and Schwerman Company of Pennsylvania, Inc.,[2] which were granted similar rights by order of the commission on April 23, 1962, pursuant to a remand from this Court and the Supreme Court in the case of *Chemical Tank Lines, Inc., v. Pennsylvania Public Utility Commission,* 193 Pa. Superior Ct. 607, 165 A. 2d 668, affirmed 406 Pa. 359, 178 A. 2d 698.

The essence of this appeal is whether the commission erred in determining that additional motor carriers were necessary to satisfy the recently developed need for motor transportation of cement products of the eastern Pennsylvania cement producers. This appeal is not an unexpected sequel to our decision in the *Chemical* case, supra.

and North Whitehall, Lehigh County, to points in Pennsylvania; and empty containers and such other facilities used in the transportation of cement, from points in Pennsylvania to points in the aforementioned boroughs and townships."

(d) Coastal Tank Lines, Inc. A. 60226, Folder 3, amended to read as follows:

"To transport, as a Class D carrier, cement in bulk in tank-type or hopper-type vehicles and in bags or containers between points in the Counties of Lehigh, Northampton, Berks, Montgomery, and York and from points in the said counties to points in Pennsylvania; and the return of refused or rejected merchandise and empty containers and such other facilities used in the transportation of cement to the point of origin."

(e) Harold C. Gabler. A. 37908, Folder 5, amended to read as follows:

"To transport, as a Class D carrier, cement in bags and cement in bulk in tank-type or hopper-type vehicles from points in the Counties of Berks, Lehigh, Northampton, and York to points in Pennsylvania; and the return of empty containers and refused or rejected shipments."

[2] We have disposed of three appeals under the number given. However, it would have been better to have appeal numbers for which filing fees were paid. But, see Rule 9 of the Rules of the Superior Court.

A brief summary of the development of the need for motor transportation of cement in eastern Pennsylvania will make the issue and its decision more readily understandable. Until recent years all of the cement produced in eastern Pennsylvania was transported exclusively by rail. On March 9, 1959, upon applications made in 1955 and 1956, the commission granted authority to three motor carriers, Harold C. Gabler, Coastal Tank Lines, Inc., and Seaboard Tank Lines, Inc., to transport cement in bulk in motor tank vehicles throughout eastern Pennsylvania to consignees lacking rail connections at the point of use. *Application of Harold C. Gabler,* 36 Pa. P.U.C. 613. This authority was granted over the protest of the eastern Pennsylvania cement producers who at that time contended that existing rail service was adequate. Some time between 1956 and 1957 the market conditions for cement changed essentially to a buyers' market, and western Pennsylvania and out-of-state producers competed more favorably with the eastern Pennsylvania producers because of the availability of motor truck delivery. The need for motor transportation of cement in eastern Pennsylvania is thus a result of the change in market conditions in the industry and the growing competition of western Pennsylvania and out-of-state cement producers. Apparently, as a result of the newly developed need, there were thirteen applicants who filed twenty-seven separate applications with the commission seeking authority as motor carriers, common or contract, to transport dry cement in bulk, bags, or containers. By its order of April 4, 1960, the commission refused all applications. The three present appellants were among five who appealed to this Court from the commission's order of April 4, 1960. The three motor carrier subsidiaries of railroads, Black Diamond Transport Company, Pennsylvania Truck Lines, Inc., and Reading Dispatch, Inc. (three present intervening ap-

pellees), did not appeal from that order, but instead filed petitions with the commission for rehearing and redetermination under section 1006 of the Public Utility Law, 66 PS §1396. Our decision reversed the order of the commission of April 4, 1960, because the commission had erred in failing to conclude that there was a need for motor transportation of cement and that the then existing service was inadequate. *Chemical Tank Lines, Inc., v. Pennsylvania Public Utility Commission*, supra, 193 Pa. Superior Ct. 607, 165 A. 2d 668. Our decision was affirmed per curiam by the Supreme Court in *Chemical Tank Lines, Inc., v. Pennsylvania Public Utility Commission*, supra, 406 Pa. 359, 178 A. 2d 698. Subsequent to our decision, intervening appellees, Harold C. Gabler, on December 20, 1960, and Coastal Tank Lines, Inc., on July 6, 1961, filed applications which in essence sought removal of the previous restrictions and the right to compete with the other applicants. Both intervening appellees held limited motor transportation rights for cement by virtue of the commission's order of March 9, 1959.

Thereafter, on April 23, 1962, the commission, upon our remand, granted the rights applied for to Chemical Tank Lines, Inc., Top Transport, Inc., E. Brooke Matlack, Inc., Modern Transfer Company, Inc., and Schwerman Company of Pennsylvania, Inc., (appellants in the *Chemical* case, supra, 193 Pa. Superior Ct. 607, 165 A. 2d 668), as well as to Cement Express, Inc., which fell into the same class as an industry sponsored carrier, but which had not appealed from the order of April 4, 1960. See *Application of Cement Express, Inc.*, 39 Pa. P.U.C. 684. In granting such rights the commission specifically stated that such authority was the minimum required under our remand, and it recognized that it had pending before it the application of the three rail subsidiary motor carriers and the applications of Gabler and Coastal for enlargement of their

rights, as well as other similar applications, which it indicated would be decided in due course.

Four months later, on August 27, 1962, the commission issued the present order granting cement transportation rights to the three railroad subsidiary motor carriers and granting enlargement of the previously granted rights of Gabler and Coastal. This appeal followed and was taken by three of the six cement industry sponsored carriers who had been granted cement transportation rights by the order of April 23, 1962.[3]

The commission's approach to the order of August 27, 1962, here involved, amounted basically to a consideration of the extent of motor carrier service sufficient to satisfy the recently developed need for motor transportation of cement which it had filled in part by its order of April 23, 1962, granting rights to the present appellants and others—in short, a determination of the extent of competition necessary in the newly developed eastern Pennsylvania cement transportation area. Other considerations also entered into the commission's order. The appellants contend that the need for motor transportation of cement was wholly filled by the appellants and three other carriers supported by the cement industry who were granted rights just four months previously, and that such service had to be proved inadequate in the usual manner before any further carriers were authorized to compete.

In all motor transport applications for initial or additional authority, the basic proof must center about the need for the proposed service and the inadequacy of the existing service, if any. Where the need, as here, is one which is newly developed, the inadequacy gen-

---

[3] Intervening appellee Coastal Tank Lines, Inc., was granted, inter alia, the right to transport cement for A. G. and W. H. Corson, Inc., from its new plant in Whitemarsh Township, Montgomery County. Appellants do not question the grant of this portion of the authority to Coastal.

erally flows from the establishment of the need met by no existing carrier at the time the need arises or is in issue. In the instant situation the need was obvious from all the evidence and the inadequacy of service arose by virtue of the fact that rail transportation was inadequate and the then existing motor carrier transportation available from Gabler, Coastal, and Seaboard was insufficient due to the restrictions upon their authority. *Chemical Tank Lines, Inc., v. Pennsylvania Public Utility Commission,* supra, 193 Pa. Superior Ct. 607, 622, 623, 165 A. 2d 668. Since such need and inadequacy were apparent, the primary issue then was the extent to which the commission should authorize qualified[4] carriers to engage in the recently developed necessity for motor transportation of cement. It was thus essentially an administrative question for the commission's determination. *John Benkart and Sons Company v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 5, 9, 7 A. 2d 584; *New Kensington City Lines, Inc., v. Pennsylvania Public Utility Commission,* 200 Pa. Superior Ct. 490, 190 A. 2d 179. Our review is to determine whether the commission acted within its power. Since the order deals basically with an administrative matter, we will not disturb it unless the appellants have shown that it is without support in the evidence or is so arbitrary, capricious, and unreasonable as to amount to an error of law or violation of constitutional rights. *John Benkart and Sons Company v. Pennsylvania Public Utility Commission,* supra, 137 Pa. Superior Ct. 5, 8, 7 A. 2d 584; *Reeder v. Pennsylvania Public Utility Commission,* 192 Pa. Superior Ct. 298, 304, 162 A. 2d 231. The fact that the commission granted the rights to the appellants four months prior to the order granting the rights to the intervening appellees in the instant case does not

---

[4] Appellants do not specifically raise a question of the fitness of intervening appellees to render the service.

change the basic situation of a recently developed need, to satisfy which numerous applications for authority have been filed. The issue before the commission was the determination, based upon the evidence, of those applicants qualified and necessary to fulfill the need and provide sufficient competition to satisfy the public requirements and convenience. In *Chemical Tank Lines, Inc., v. Pennsylvania Public Utility Commission,* supra, 193 Pa. Superior Ct. 607, 165 A. 2d 668, we did not intend, nor should our decision be construed, to indicate that the industry sponsored carriers alone were sufficient to fulfill the needs related to the eastern Pennsylvania cement producers and their customers. The commission must consider the public interest as a whole. In the prior appeal we were concerned with the interest of the cement producers in making available their product to all markets in the Commonwealth. On the present appeal we have before us, as did the commission, that portion of the public interest represented by the consumers. This interest is particularly important because the shipping charges for cement are paid by the consumers, not the producers. *Applications of Black Diamond Transport Company,* 37 Pa. P.U.C. 701, 714.

The evidence of record shows that the requirements, desires, and convenience of the consumers are part of the general public interest as distinguished from the requirements, desires, and convenience of the industry, both of which, however, are segments of the general newly developed need for motor transportation of cement from the eastern Pennsylvania producing area. The testimony indicates this definite consumer convenience which the commission recognized. Testimony produced by two of the rail subsidiaries was in the form of consumer requests, desires, and preferences for service by the motor carriers associated with the railroads with whom they have had satisfactory relationships in the past. We note that the authority requested

by the subsidiaries of the railroad companies was limited to those points traditionally served by the parent railroads. These applications were filed at the same time as those of the present appellants (sponsored by the cement industry), and the nature and quality of the testimony of consumers on behalf of the railroad subsidiaries was similar to that presented by the cement industry on behalf of the industry sponsored carrier applicants. These applications were properly considered by the commission on an equal and original footing with respect to the need and inadequacy of existing service.

The evidence produced by the intervening appellees Gabler and Coastal also sufficiently demonstrated the consuming public's phase of this recent need for motor transportation of cement. Gabler and Coastal, it will be noted, were among the three carriers who received limited transportation rights for cement in 1959 upon their earlier applications in 1956. We determined in the prior appeal that their authority was too limited to satisfy the need. Consequently, after our decision, Gabler and Coastal filed the applications to broaden their transportation rights so as to remove the limitations which created the inadequacy. Typical of the testimony on behalf of Gabler and Coastal was that produced by J. Robert Bazley, Inc., Pottsville, Pennsylvania, a contracting company engaged in heavy construction work throughout the State of Pennsylvania. This company uses from 150,000 to 200,000 barrels of bulk cement plus bag cement in smaller quantities. Bazley indicated that rail sidings are not always available at or near the job sites; that the company desired to purchase its cement f.o.b. the plant, and name the carrier to perform the transportation so as to give it a better control of the material at the time it is needed at the job. The shipment by a carrier not selected by or known to Bazley, the consumer, deprives it of proper

and adequate control of the shipment and the timeliness of delivery. Additional factors considered by the consumer are the elimination of rehandling expense and the lowering of costs in the bidding of jobs. Bazley further indicated that there were advantages in being able to order cement in single truck-load lots; that transshipment of cement was expensive, and because of the expense was unsatisfactory.

The testimony of the consumers in the nature of their requests for service was competent evidence indicating the reasonable necessity for the service proposed. The testimony of such witnesses in fact complements and corroborates the over-all public need shown on the record in the prior appeal. The commission properly observed that ". . . [consignee] witness after consignee witness testified that certification of Coastal and of other applicants in these proceedings would result in more flexible and more convenient service and would, above all, afford to the consignee a measure of selection and control over the transportation service for which he is required to pay."

The inadequacy of existing service is as apparent as the need. In all of the applications, including that of Gabler and Coastal which were not filed until after our decision in the prior appeal, the inadequacy existed because rail service was insufficient, and the only other motor transportation, that of the three limited right carriers, was too restricted to satisfy the broad and general need for cement motor carrier service. The mere fact that the commission handed down the order in the case of the present appellants a short time prior to issuing its order in the present case cannot be taken to indicate that the present appellants thus render the only existing adequate or necessary service. We cannot stress too greatly the fact that this was a newly developed need. The existence of appellants as available carriers only recently certified did not necessarily re-

quire refusal of additional carriers, especially in view of the recent nature of the need and the almost simultaneous applications to meet that need. *John Benkart and Sons Company v. Pennsylvania Public Utility Commission,* supra, 137 Pa. Superior Ct. 5, 9, 7 A. 2d 584.

In view of the need which developed, the decision to be made was the extent to which this need should be filled by the various conflicting applicants. Under such circumstances it was not improper for the commission to inject an element of competition into this fledgling field of transportation. *Coastal Tank Lines, Inc., v. Pennsylvania Public Utility Commission,* 189 Pa. Superior Ct. 482, 489, 151 A. 2d 846. The object of these proceedings was not to establish a practical monopoly on behalf of the industry sponsored carriers. The primary consideration is to serve the general public interest, and the extent of competition was basically a matter within the administrative discretion of the commission. *Sayre v. Pennsylvania Public Utility Commission,* 161 Pa. Superior Ct. 182, 184, 54 A. 2d 95; *New Kensington City Lines, Inc., v. Pennsylvania Public Utility Commission,* supra, 200 Pa. Superior Ct. 490, 190 A. 2d 179. The allocation of service to the various cement industries between the appellant carriers and the other industry sponsored carriers, while not an unlawful circumstance, was a matter to be considered in finding that the injection of competition sponsored by consumers will further the public interest and tend to eliminate any trend toward monopolistic practice. *Ruettger v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 388, 393, 64 A. 2d 675; *Chemical Tank Lines, Inc., v. Pennsylvania Public Utility Commission,* supra, 193 Pa. Superior Ct. 607, 626, 165 A. 2d 668. See, also, *Federal Trade Commission v. Cement Institute,* 333 U. S. 683, 68 S. Ct. 793, 92 L. Ed. 1010.

The appellants raise certain other specific issues which we shall discuss briefly.

The appellants argue that the declaration of policy contained in section 801 of the Public Utility Law prohibits an "unrestricted" grant of motor carrier authority to a railroad or rail affiliate under the circumstances of the present proceeding. Section 801, 66 PS §1301, provides in part: "It is hereby declared to be the policy of the Legislature to regulate in this act the service of common carriers by motor vehicle and forwarders in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in such service, and among such carriers and forwarders in the public interest; . . . [and] to improve the relations between, and coordinate the service and regulation of, common carriers by motor vehicle, forwarders, and other carriers; . . ." We find nothing of the restrictive nature in the declaration of policy which the appellants contend exists. The policy and decisions of the Interstate Commerce Commission relied upon by appellants are wholly inapplicable primarily because the Interstate Commerce Act, which includes language similar to the Declaration of Policy in the Pennsylvania Public Utility Law, contains additional specific restrictions regarding motor carrier service by railroads which are significantly absent from the Pennsylvania Act. 49 U.S.C.A. §5(2)(b). Permitting rail subsidiaries to engage in motor transportation is not foreclosed by the spirit or the letter of our Public Utility Law, nor is it necessarily detrimental to preservation of the inherent advantages of motor transportation. In fact, with proper commission limitation it should improve relations between both types of carriers consistent with the declared policy, and co-ordinate the service and regulation thereof.

The appellants contend that the commission's finding of a public need for the service of Black Diamond

is wholly unsupported because the applicant presented neither request testimony nor public witnesses in support of its application. The evidence presented by Black Diamond (which was incorporated in 1958 and is now applying for its initial motor carrier operating authority) was that it desired to be able to serve by motor carrier those points traditionally served by the parent railroad. Its purpose, of course, was to give the parent, Lehigh Valley Railroad Company, a reasonable opportunity to participate in the substantial volume of cement traffic which would be diverted from rail to motor carrier. Evidence was further presented concerning the loss of revenue to the railroad due to diversion of traffic to motor carriers. No shipper or consignee testimony was presented, nor was there evidence introduced of specific requests for service from this carrier. This, however, was not fatal. While the commission did not formally consolidate the records in each of the cases involving the three rail subsidiaries and the other motor carrier applicants, the commission wrote but one order covering all five cases presently before us. In that order the commission properly considered all of the cases together since the need which developed was recent and industry-wide. The appellants took one appeal from that order. The general need for motor transportation of cement, as we have indicated, was obvious from the testimony presented on behalf of the present appellants in their cases and on behalf of the applicants in the cases presently before us. It is the same need, that is, a public necessity representative of producer and consumer convenience. The commission should have consolidated the proceedings in view of their nature and its ultimate conclusion. But the matter of consolidation is one of procedure, and as such is subordinate to the paramount function of the commission so long as the commission observes the basic requirements designed for the protection of the rights of

those involved. *Pittsburgh v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 83, 86, 87, 33 A. 2d 641. The commission must look to substance and ultimate effect rather than form in determining the matters before it. *Wiley v. Pennsylvania Public Utility Commission,* 186 Pa. Superior Ct. 309, 322, 142 A. 2d 763; *Department of Highways v. Pennsylvania Public Utility Commission,* 198 Pa. Superior Ct. 87, 101, 182 A. 2d 267. Since the commission entered a single order for all of the cases and it properly considered the testimony as interrelated, we view the matter as though the commission had formally consolidated the proceedings. Appellants obviously lost sight of the fact that the issue at this stage of the proceedings was the extent of competition to be properly injected into the field of cement transportation by motor carrier; the need was not the basic issue, having been recently developed and clearly established to exist industry-wide. We observe also that in the prior appeal, *Chemical Tank Lines, Inc., v. Pennsylvania Public Utility Commission,* supra, 193 Pa. Superior Ct. 607, 165 A. 2d 668, we considered the question of need as generally applicable to all the appellants there involved.

In the prior appeal the appellants argued and established that the industry-wide need, as well as the particular needs of the industry, existed because of the change in market conditions. They cannot argue in the present appeal that such need did not exist because the times in issue are the same; they have therefore admitted the existence of the need. See *Zank v. West Penn Power Company,* 169 Pa. Superior Ct. 164, 166, 82 A. 2d 554.

The order of the commission is affirmed.