J-A19034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, AS SUBROGEE OF LEONARD S. FIORE, INC., | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA AND DAVID PHILLIPS d/b/a DA-LYN CONTRACTORS | : : : | No. 446 EDA 2017 |

Appeal from the Order entered December 23, 2016
in the Court of Common Pleas of Philadelphia County,
Civil Division, No(s): December Term, 2014 No. 0175

BEFORE: BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 18, 2017**

The Cincinnati Insurance Company ("CIC"), as subrogee of Leonard S. Fiore, Inc. ("Fiore"), appeals from the Order granting the Motion for Summary Judgment filed by Selective Insurance Company of South Carolina ("SIC") and David Phillips d/b/a Da-Lyn Contractors (collectively "Defendants"), and denying CIC's Cross-Motion for Summary Judgment. We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural background, which we adopt for the purpose of this appeal. **See** Trial Court Opinion, 12/23/16, at 1-4.

On December 23, 2016, the trial court granted Defendants' Motion for Summary Judgment, and denied CIC's Cross-Motion for Summary Judgment. This timely appeal followed.[1]

On appeal, CIC raises the following issues for our review:

1. Whether the [t]rial [c]ourt erred in granting [D]efendants' [M]otion for [S]ummary [J]udgment in ruling[,] as a matter of law[,] that the [SIC] primary insurance policy [("the SIC policy")] was excess over the [CIC] primary insurance policy [("the CIC policy")] and the [CIC] umbrella policy [("the CIC umbrella policy")?]

2. Whether the [t]rial [c]ourt erred in denying [CIC's] [C]ross-[M]otion for [S]ummary [J]udgment in ruling[,] as a matter of law[,] that the [SIC] policy was not triggered[,] and required to exhaust[,] prior to the [CIC] umbrella policy[?]

3. Whether the [t]rial [c]ourt erred in determining that the [SIC] policy was not obligated to reimburse the defense costs incurred by [CIC] in the defense of Fiore and Wal-Mart in the *Peterman* lawsuit[?]

Brief for Appellant at 4.

As CIC's issues are related, we will address them together. In its first issue, CIC contends that SIC advanced only two arguments in support of its Motion for Summary Judgment, namely, that (1) Fiore and Wal-Mart are additional insureds under the SIC policy with respect to bodily injury caused in whole or in part by the ongoing operations of Da-Lyn Contractors ("Da-Lyn"); and (2) the Amended Complaint filed in the underlying *Peterman* litigation lacks any allegations of Da-Lyn's negligence. *Id*. at 10. CIC

---

[1] The trial court did not order CIC to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(a).

asserts that both of SIC's arguments were impliedly rejected pursuant to the trial court's finding that the allegations of the Amended Complaint filed in the underlying *Peterman* litigation sufficiently articulated proximate causation attributable to Da-Lyn. *Id*. at 10-11. CIC claims that, pursuant to the indemnification provision in the contract between Fiore and Da-Lyn, Da-Lyn was contractually obligated to indemnify Fiore and Wal-Mart for any bodily injury caused by Da-Lyn's negligence. *Id*. at 12-14. According to CIC, SIC does not dispute that the SIC policy, although excess over the CIC policy, applies before the CIC umbrella policy is triggered. *Id*. at 16-17.

In its second issue, CIC asserts that, pursuant to the contract between Fiore and Da-Lyn, Da-Lyn was required to obtain commercial general liability coverage with a personal and advertising injury limit of $1 million, and that the SIC policy was, therefore, the primary coverage under the contract between Fiore and Da-Lyn. *Id*. at 18.[2] CIC claims that the contract between Fiore and Da-Lyn also required that "[a]ll insurance must contain an endorsement that the insurance coverage is primary to that of Wal-Mart's[,] and that Wal-Mart's policies are excess." *Id*. (quoting Exhibit C to the Da-Lyn/Fiore Contract). CIC argues that, after the CIC policy was exhausted during settlement of the *Peterman* lawsuit, the SIC policy should

---

[2] CIC further asserts that, pursuant to the contract between Fiore and Da-Lyn, Da-Lyn was also required to obtain umbrella liability coverage with a limit of $3 million, but failed to do so. *See* Brief for Appellant at 18.

have been exhausted before the CIC umbrella policy was triggered. *Id*. at 19. CIC contends that, in ruling that the SIC policy was excess over the CIC umbrella insurance policy, the trial court failed to compare the language of the SIC policy to the language of the CIC umbrella policy regarding the order in which the policies were required to exhaust. *Id*. at 17. Specifically, CIC points to the "Other Insurance" clause in the CIC umbrella policy, which states as follows:

> The insurance provided by this Coverage part is excess over any other valid and collectible insurance, other than insurance written specifically to be excess over this insurance, and shall not be contributory.

*Id*. at 19 (quoting the CIC Umbrella Policy, Form US 101 UM 10 02, at p. 14). CIC asserts that, in ruling that the SIC policy was excess to the CIC umbrella policy, the trial court relied exclusively on the "Blanket Additional Insured" form included in the SIC policy, which reads as follows:

> This coverage shall be excess with respect to the person or organization included as an additional insured by its provisions: any other insurance that person or organization has shall be primary with respect to this insurance, unless this coverage is required to be primary and not contributory in the contract, agreement or permit referred to above.

*Id*. (quoting the SIC Policy, Blanket Additional Insured Form). CIC claims that after the $1 million limit under the CIC policy was exhausted, the SIC policy should have applied, *pro rata*, with the CIC umbrella policy until the *Peterman* settlement was fully paid. *Id*. at 22. CIC argues that, because Fiore and Wal-Mart are additional insureds under the SIC policy, the costs of

defending them, as incurred by CIC, qualify as recoverable "damages" under the SIC policy. *Id*. Finally, CIC contends that the contract between Fiore and Da-Lyn is an "insured contract" under the SIC policy, and is not subject to the contractual liability exclusion contained therein. *Id*.

In its third issue, CIC contends, in the alternative, that if the trial court's Order granting summary judgment in favor of SIC is affirmed, "there must also be a finding that Da-Lyn's insurance coverage with [SIC] is primary and contributory over the coverage afforded to Wal-Mart." *Id*. at 25.

We review orders granting summary judgment under the following standard:

> Summary judgment is proper only when the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the non[-] moving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. 2007) (citations omitted). When considering an order granting summary judgment in the context of a declaratory judgment action, our scope of review is plenary. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 895 (Pa. 2006). We will reverse the order of the trial court only if we find that an error of law or an abuse of discretion

has occurred. *Id*. "The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence." *Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338, 1341 (Pa. Super. 1994).

In its Opinion, the trial court addressed CIC's issues, set forth the relevant law, and determined that the issues lack merit. *See* Trial Court Opinion, 12/23/16, at 4-10. As we discern no abuse of discretion or error of law in the trial court's analysis, we affirm its Order on this basis. *See id*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/17

RECEIVED

DEC 2 2 2016

ROOM 521

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION—CIVIL**

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY | : | December Term, 2014 |
| *Plaintiff* | : | Case No. 00175 |
| v. | : | Commerce Program |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA | : | |
| and | : | |
| DAVID PHILLIPS d/b/a/ DA-LYN CONTRACTORS | : | Control Nos. |
| *Defendants* | : | 16062587, 16072073. |

## ORDER

AND NOW, this _____ 23rd _____ day of December, 2016, upon consideration

of the motion for summary judgment of defendants Selective Insurance Company of

South Carolina and David Phillips d/b/a/ Da-Lyn Contractors, the cross-motion for

summary judgment of plaintiff, The Cincinnati Insurance Company, the respective

answers in opposition, and the *memoranda* of law, it is **ORDERED** as follows:

I.     The motion for summary judgment of defendants is **GRANTED**.

II.    The motion for summary judgment of plaintiff, The Cincinnati Insurance

       Company, is **DENIED**.

BY THE COURT,



RAMY I. DJERASSI, J.

DOCKETED

DEC 2 3 2016

R. POSTELL
COMMERCE PROGRAM

The Cincinnati Insuranc-WSJDM

14120017500050

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) R. POSTELL 12/23/2016

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION—CIVIL

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY | : December Term, 2014 |
| *Plaintiff* | : Case No. 00175 |
| v. | : Commerce Program |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA and DAVID PHILLIPS d/b/a/ DA-LYN CONTRACTORS | : Control Nos. |
| *Defendants* | : 16062587, 16072073. |

### *MEMORANDUM* OPINION

This is a declaratory judgment action arising out of a catastrophic accident which occurred at a construction site. The instant cross-motions of summary judgment require the Court to determine whether a policy of insurance obtained by a subcontractor was a primary policy or an excess policy with respect to any insurance obtained by the general contractor. For the reasons below, the Court finds that the policy of insurance obtained by the subcontractor was an excess policy.

### BACKGROUND

Plaintiff, Cincinnati Insurance Company ("Cincinnati"), is licensed to issue insurance policies in Pennsylvania.[1] Defendant Selective Insurance Company, ("Selective") is also licensed to issue insurance policies in Pennsylvania.[2] Defendant David Phillips, d/b/a/ Da-Lyn Contractors ("Da-Lyn"), is a company engaged in the

---

[1] Admission of plaintiff Cincinnati, complaint, ¶ 4.
[2] Admission of defendant Selective, answer to complaint, ¶ 5.

1

construction trade. A non-party to this action, Mr. Jody Peterman ("Peterman"), was an employee of Da-Lyn in the course of a project at a Wal-Mart construction site. Another non-party to this action, Leonard S. Fiore, Inc. ("Fiore"), is a corporation engaged in the construction trade.

Pursuant to the terms of a "Prime Contract," Fiore operated as a manager or general contractor during construction work at a "Wal-Mart" store. The Prime Contract between Fiore and Wal-Mart contained a provision requiring Fiore to indemnify Wal-Mart from damages arising out of the actions or omissions of Fiore in the pursuit of its duties as manager or general contractor.[3] At all times relevant to this action, Da-Lyn operated as a subcontractor of Fiore, pursuant to the terms of a "Subcontract" dated July 22, 2008.[4] The Subcontract between Fiore and Da-Lyn also contained an indemnification provision for the benefit of Fiore.[5]

While acting as manager or general contractor under the Prime Contract, Fiore was under two layers of insurance protection: a commercial general liability policy and a commercial umbrella liability policy, both of which had been issued by Cincinnati under the same policy number, CPP-089-36-36/CPA (respectively, the "Cincinnati Primary Policy" and the "Cincinnati Umbrella Policy").[6] At all times relevant to this action, defendant Da-Lyn was insured under a commercial general liability policy which had been issued by defendant Selective, No. S—139960104 (the "Selective Policy").[7]

---

[3] Prime Contract (Construction Agreement Between Owner and Contractor), Exhibit E to the motion for summary judgment of Cincinnati, motion control No. 16072073, Article 13.1.

[4] Subcontract between Fiore and Da-Lyn, Exhibit G to the motion for summary judgment of Cincinnati, motion control No. 16072073.

[5] Id., ¶ 13.

[6] Cincinnati Primary Policy, Exhibit A to the motion for summary judgment of Cincinnati, motion control No. 16072073; Cincinnati Umbrella Policy, Exhibit B to the motion for summary judgment of Cincinnati, motion for summary judgment, motion control No. 16072073.

[7] Selective Policy, Exhibit C to the motion for summary judgment of Cincinnati, motion control No. 16072073.

On October 8, 2008 Peterman fell from a ladder while working under Da-Lyn at the Wal-Mart construction site.[8] In April 2010, Peterman filed a lawsuit against Wal-Mart, Fiore, and other defendants, in the Court of Common Pleas, Philadelphia County (the "Underlying Action").[9] In the amended complaint, Peterman *inter alia* alleged that "as a direct and proximate result of the carelessness, negligence and wrongdoing of defendants ... [Peterman] ... suffered the functional loss of the lower part of his body."[10] Defendant Da-Lyn, as the employer of Peterman, was not a named party in the Underlying Litigation.[11]

On June 15, 2010, Cincinnati, on behalf of Fiore, claimed indemnification from Selective, insurer of Da-Lyn. On September 24, 2010, Selective replied to the claim for indemnification and admitted that Fiore was an additional insured under the Da-Lyn policy. However, Selective also asserted that it had no obligation to provide a defense to Fiore in the Underlying Litigation. This letter specifically stated:

> We have had an opportunity to review the contract [between Fiore and Da-Lyn] and our policy. The contract does state that Leonard S. Fiore Inc. shall be named as an additional insured on the [Selective] policy; however, the contract does not state that our insured's [Da-Lyn's] policy shall be primary. We acknowledge Leonard S. Fiore, Inc. as an Additional Insured on our insured policy; however, it would only be an additional insured on an excess basis.
>
> ***
>
> To [s]ummarize ... Fiore ... is an additional insured under the Selective [P]olicy, but only on an excess basis, and only with respect to bodily injury or property damage caused in whole

---

[8] *Inspection Narrative*, the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA"), p. 2, Exhibit I to the motion for summary judgment of Cincinnati, motion control No. 16072073.
[9] Underlying Litigation: complaint, <u>Jody Peterman v. Wal-Mart Stores, Inc., Leonard S. Fiore et al.</u> Exhibit B to the motion for summary judgment of Selective, motion control No. 16062587.
[10] <u>Id.</u>, ¶ 34.
[11] <u>Id.</u>, at caption.

3

or in part by our insured's ongoing operations. Accordingly, since Selective is an excess carrier we have no obligation to provide a defense to ... Fiore ... in connection with [the Underlying Litigation].[12]

Subsequent to Selective's refusal to defend Fiore, Cincinnati settled the Underlying Action and paid on behalf of Fiore and Wal-Mart the "per occurrence limit of liability" under the Cincinnati Primary Policy, as well as a portion of the limit of liability under the Cincinnati Umbrella Policy.[13] On November 26, 2014, Cincinnati commenced the instant declaratory judgment action and filed a complaint against defendants Selective and Da-Lyn. In the course of litigation, this Court granted three extensions to the case-management deadlines. On June 20, 2016, defendants Selective and Da-Lyn filed a motion for summary judgment, and, on July 18, 2016, plaintiff Cincinnati filed its cross—motion for summary judgment. The motion and cross-motion have been fully briefed and are ripe for a decision.

## DISCUSSION

Before addressing the issues presented by the cross-motion for summary judgment, the Court notes that—

> [t]he proper construction of an insurance policy is resolved as a matter of law in a declaratory judgment action.... The Declaratory Judgments Act may be invoked to interpret the obligations of the parties under an insurance contract, including the question of whether an insurer has a duty to defend and/or a duty to indemnify a party making a claim under the policy.[14]

A court's first step in a declaratory judgment action

---

[12] Letter dated September 24, 2010, from Selective to Cincinnati, Exhibit J to the motion for summary judgment of Cincinnati, control No. 16072073, pp. 2—3.

[13] Motion for summary judgment of Cincinnati, at ¶¶ 31—33; admission of Selective at ¶¶ 31—33 in its response in opposition, motion control No. 16072073. The trial worksheet for the Underlying Action, dated October 22, 2012 at Docket No. 1004-03751, shows that the case was settled "prior to assignment for trial."

[14] QBE Ins. Corp. v. Walters, 2016 Pa. Super. 205 (Sept. 9, 2016).

4

concerning insurance coverage is to determine the scope of the policy's coverage....[15]

The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.[16]

If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover. The duty to defend also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy.... Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage.[17]

## I. The Underlying Amended Complaint sufficiently alleged that Peterman had suffered bodily injury proximately caused by Da-Lyn.

In their motion for summary judgment, defendants Selective and Da-Lyn assert that Fiore and Wal-Mart, though additional insureds, have no coverage under the Selective Policy because the amended complaint in the Underlying Action failed to allege proximate causation as required to trigger coverage.[18] Specifically, Selective argues that Peterman's amended complaint lacked any allegation of negligence attributable to Da-Lyn; therefore, Selective concludes that without any allegations of proximate causation attributable to Da-Lyn, no coverage could be triggered in favor of Fiore under the Selective Policy.[19] Opposing this argument, Cincinnati asserts that Peterman's amended complaint did allege negligence attributable to Da-Lyn; consequently, the Underlying

---

[15] Gen. Acc. Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997).
[16] Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc., 119 A.3d 1035, 1046 (Pa. Super. 2015).
[17] Gen. Acc. Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997).
[18] Motion for summary judgment of Selective, ¶¶ 52—57, motion control No. 16062587.
[19] Id., ¶¶ 52—53.

5

Action sufficiently averred proximate causation under the Selective Policy.[20] To decide this issue, the Court turns to the pertinent language in the amended complaint filed by Peterman in the Underlying Action. The amended complaint stated as follows:

¶ 27. At all times material hereto, plaintiff Jody Peterman was an employee in the course and scope of his relationship with Da-Lyn Construction which was under contract with owners [Wal-Mart] and defendants [including Fiore,] for the general construction and/or repair of the aforesaid [Wal-Mart] building.

¶ 28. At all times material hereto, Defendants [such as defendant Fiore] failed to insure that safety procedures were being followed by all contractors and **subcontractors** to minimize the hazards related to the use of scaffolding and/or ladders in clear violation of safety regulations.

¶ 29. On October 7, 2008, Plaintiff Jody Peterman was attempting to descend from a ... scaffold using a portable aluminum extension ladder, when the extended portion of the ladder slipped downward ... causing the ladder and Plaintiff, Jody Peterman, to fall approximately 24 feet to the ground resulting in serious and permanent bodily injuries.

\*\*\*

¶¶ 33—34. As a direct and proximate result of the carelessness, negligence and wrongdoing of defendants ... Jody Peterman suffered fractured ribs ... sternum ... scapula, punctured lungs and a T10 —11 burst fracture resulting in paraplegia.... [21]

The language contained in Peterman's amended complaint leaves no doubt: in the Underlying Action, Peterman sufficiently alleged that Fiore's subcontractors, which included Da-Lyn, had failed to adopt safety procedures related to the use of scaffolds

[20] Response of Cincinnati in opposition to the motion for summary judgment of Selective, ¶¶ 52—57, motion control No. 16062587.
[21] Underlying Litigation: amended complaint at ¶ 28, Jody Peterman v. Wal-Mart Stores, Inc., Leonard S. Fiore et al. Exhibit B to the motion for summary judgment of Selective, motion control No. 16062587 (emphasis supplied).

6

and ladders during work at the Wal-Mart construction site. The amended complaint in the Underlying Action also sufficiently alleged that Peterman had suffered bodily damage, including fractured bones and paraplegia, all of which were proximately caused by the alleged negligent acts or by the negligent omissions of Fiore and its subcontractors, including Da-Lyn. For this reason, the court finds that the amended complaint in the Underlying Action sufficiently articulated proximate causation attributable to Da-Lyn.

II.     **The Selective Policy is excess to the Cincinnati Primary and Umbrella Policies**.

In the motion for summary judgment, Selective asserts that its policy was excess to both the Cincinnati Primary Policy and the Cincinnati Umbrella Policy. Selective concludes that as an excess carrier, it was not required to pay for the defense in the Underlying Action. Selective also concludes that it has no obligation to indemnify Cincinnati because the settlement with Peterman did not exhaust the primary insurance limits under the two Cincinnati policies. Selective relies on the language of its policy in support of this argument. First, Selective calls attention upon the following provision in its policy:

> **WHO IS AN INSURED** is amended to include as an additional insured any person or organization with whom you [Da-Lyn] **have agreed** in writing **in a contract, agreement or permit** that such a person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or property damage caused, in whole or in part, by:
>
> 1.  Your [Da-Lyn's] ongoing operations performed for that person or organization....
> ***
> This coverage shall be excess with respect to the person or

7

organization included as an additional insured ... **unless this coverage is required to be primary and not contributory in the contract, agreement or permit referred to above.**[22]

Second, Selective calls attention upon another provision in its policy. That provision states that—

[w]hen this insurance is excess, we will have no duty under Coverages **A** [relating to bodily damage and property damage liability] or **B** [relating to personal and advertising injury liability] to defend the insured against any suit if any other insurer has a duty to defend the insured against that suit....[23]

Lastly, Selective calls attention upon a third provision in its policy. That provision states that—

[t]his coverage shall be excess with respect to the person or organization included as an additional insured by its provisions; **any other insurance that person or organization has shall be primary with respect to this insurance, unless this coverage is required to be primary and not contributory in the contract, agreement or permit referred above.**[24]

Before undertaking an analysis of the text quoted above, the Court is mindful that—

"[t]he task of interpreting an insurance contract is generally performed by a court rather than by a jury. The goal of that task is ... to ascertain the intent of the parties as manifested by the language of the written instrument.... Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required

---

[22] Selective Policy (Commercial General Liability), CG 72-02-07-04, p.p. 5—6 of 8, Exhibit D2 to the motion for summary judgment of defendant Selective, motion control No. 16062587 (some emphasis supplied).

[23] Id., CG 00 01 12 04 p. 12 of 16, Exhibit D2 to the motion for summary judgment of defendant Selective, motion control No. 16062587.

[24] Id. at Exhibit D2, CG 72 02 07 04, p. 6 of 8 (emphasis supplied).

8

to give effect to that language."[25]

With this standard in mind, the Court finds that the clear and unambiguous language in the Selective Policy requires **any** insurance policy obtained by Fiore to be primary with respect to the Selective Policy, **unless** the Subcontract between Fiore and Da-Lyn requires the Selective Policy to be primary. Guided by this clear requirement, the Court turns to the language in the Subcontract executed by Da-Lyn and Fiore to determine whether that document specifically required Da-Lyn's policy –namely, the Selective Policy– to be primary rather than excess. An examination of the entire body of that document, including the paragraphs captioned INSURANCE AND RISK OF LOSS and INDEMNITY, convinces this Court that the Subcontract does not contain any language specifically requiring the Da-Lyn/Selective policy to be primary.[26] Based on the foregoing, the Court may only conclude that the Selective Policy is merely excess to **any other insurance** which Fiore may have had as an additional insured. This means that the Selective Policy is excess not only to the Cincinnati Primary Policy, but also to the Cincinnati Umbrella Policy. Furthermore, the record shows that the policy limit under the Cincinnati Primary Policy was $1 million for each occurrence, while the policy limit under the Cincinnati Umbrella Policy was $12 million for each occurrence.[27] Since Cincinnati admits that it settled the Underlying Action for $8.5 million, the Court finds that Cincinnati's policy limits were not exhausted; therefore, Selective –an excess carrier to the policies issued by Cincinnati– has no duty to indemnify Cincinnati for the

---

[25] Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).
[26] Subcontract between Fiore and Da-Lyn, Exhibit G to the motion for summary judgment of Cincinnati, motion control No. 16072073.
[27] Cincinnati Primary Policy (GA-501-10-01), Exhibit A to the motion for summary judgment of Cincinnati, motion control No. 16072073; Cincinnati Umbrella Policy (USC-504-09-02), Exhibit B to the motion for summary judgment of Cincinnati, motion control No. 16072073.

9

settlement in the Underlying Action.[28]

Finally, the Court notes that Da-Lyn had no duty to defend Fiore and Wal-Mart in the Underlying Action, pursuant to the clear language contained in the Selective Policy. That policy specifically stated that—

> [w]hen this insurance is excess, we will have no duty under Coverages **A** [relating to bodily damage and property damage liability] or **B** [relating to personal and advertising injury liability] to defend the insured against any suit if any other insurer has a duty to defend the insured against that suit...[29]

For these reasons, the motion for summary judgment of Selective is granted and the cross-motion for summary judgment of Cincinnati is denied.

BY THE COURT,

_____
RAMY I. DJERASSI, J.

---

[28] Cincinnati's admission that it settled the Underlying Action for $8.5 million can be found in its *memorandum* of law in opposition to the motion for summary judgment of Selective, at p.1, motion control No. 16062587.

[29] Selective Policy, (CG 00 01 12 04) p. 12 of 16, Exhibit D2 to the motion for summary judgment of defendant Selective, motion control No. 16062587.

10